Marc E. Albert, No. 345181
Bradley D. Jones, No. VA68
Tracey M. Ohm, No. 982727
Joshua W. Cox, No. 1033283
Ruiqiao Wen, No. 1743500
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Tel. (202) 785-9100
Fax (202) 572-9943
marc.albert@stinson.com
brad.jones@stinson.com
tracey.ohm@stinson.com
joshua.cox@stinson.com
ruiqiao.wen@stinson.com
*Attorneys for*
*MP PPH LLC,*
*Debtor and Debtor-In-Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 23-00246-ELG |
| MP PPH LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| MP PPH LLC, | ) | Adv. Proc. No. _____ |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| District of Columbia, | ) | |
| | ) | |
| Defendant. | ) | |

## **DEBTOR'S COMPLAINT FOR INJUNCTIVE RELIEF**

MP PPH LLC, the debtor and debtor-in-possession in the above-captioned case (the

"Debtor"), and as Plaintiff in the above-captioned adversary proceeding, alleges for its Complaint

(this "Complaint"), upon knowledge of its own acts and upon information and belief as to other matters, as follows:

## NATURE OF THE ACTION

1.      This adversary proceeding is brought pursuant to Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") to enjoin the District of Columbia Office of the Attorney General (the "District") from continuing to pursue a receivership, enforce the across-the-board rent reductions, and from continuing litigation outside the scope of its police and regulatory power, including the commencement or continuation of their active judicial, administrative, or other actions or proceedings against the Debtor that were or could have been commenced before the commencement of this Chapter 11 case ("Case"), if not otherwise subject to the automatic stay imposed by section 362 of the Bankruptcy Code.

2.      The Debtor and District are both concerned about the wellbeing and living conditions of the approximately 2,500 tenants of the Marbury Plaza Apartment Complex—the single-asset real property at issue in this Case. The Debtor's bankruptcy case was filed to accomplish two primary objectives: (i) to facilitate use of the $10 million DIP Facility to make critical health-safety repairs required by the Superior Court; and (ii) to enable a market sale of the Property under the terms of a confirmed chapter 11 plan.

3.      While this case is only a few months old, the Debtor has diligently pursued these efforts. The secured lender has agreed to a cash collateral budget requiring millions of dollars in repairs, and the Debtor has obtained Court approval of a DIP Facility funding those repairs. The pre-petition management has been replaced with a new professional property management company experienced in distressed real estate. Professionals have been employed to guide the

Debtor through this bankruptcy, including a realtor with expertise in selling distressed multi-family properties.

4.      The District, through its *Motion of District of Columbia to Verify Superior Court Litigation Regarding Debtor Is Excepted from the Automatic Stay Pursuant 11 U.S.C. § 362(b)(4) Or, In the Alternative, Motion for Relief from the Automatic Stay Regarding Continuation of, Prosecution of Non-Bankruptcy Litigation In Superior Court* [Dkt. No. 34] ("Motion for Relief from Stay") seeks to continue pre-petition litigation filed in the D.C. Superior Court under the D.C. Tenant Receivership Act and the D.C. Consumer Protection Procedures Act. Through the Superior Court Case, the District seeks the appointment of a receiver, a permanent injunction, damages, and other equitable relief. However, the District has not explained how it plans to proceed if a receiver were appointed. It is unclear how a receivership would affect the ongoing efforts to rehabilitate and sell the Property through this bankruptcy case. A prior decision of this Court has already recognized that a receivership is simply incompatible with a bankruptcy case, requiring this Court to suspend any receivership if a chapter 11 case proceeds. *In re Stratesec, Inc.*, 324 B.R. 156, 158 (Bankr. D.D.C. 2004).

5.      A receiver with the full scope of powers under the D.C. Statute would dispossess management, be accountable to the Superior Court rather than this Court, and have no responsibility for the fair treatment of creditors that the Bankruptcy Code requires. Given the size and complexity of the apartment complex in this case, a receiver would require a new management team and cash management procedures, have to establish his or her own repair plan, and then attempt to implement those repairs—all without sufficient funding to do so.

6.      A receivership would represent a significant step backwards in the progress being made to rehabilitate and sell the Property. Irreparable damage the Debtor's ability to reorganize

and harm the ongoing efforts to provide safe and secure housing to thousands of people, if the District is permitted to continue the pre-petition litigation against the Debtor. Accordingly, the Debtor brings this Complaint requesting this Court issue an injunction prohibiting the District from pursuing litigation against the Debtor, appointing a receiver, and barring the current rent reductions.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.

8.      This is a core proceeding pursuant to 28 U.S.C. § 157(b) and Rule 7008 of the Bankruptcy Rules. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

9.      The Plaintiff is the Debtor in the above-captioned Chapter 11 Case.

10.     The Defendant in this adversary proceeding is the District, a municipal corporation empowered to sue and be sued, is the local government for the territory constituting the permanent seat of the government of the United States.

## FACTUAL BACKGROUND

11.     The Debtor filed a voluntary chapter 11 bankruptcy petition on August 31, 2023 (the "Petition Date").

12.     The Debtor is a single asset real estate limited liability company organized under the laws of the State of Delaware. Its principal place of business is located in the District.

13.     The Debtor owns a 100 percent fee simple interest in a 674-unit market rate multifamily apartment complex located in the 2300 block of Good Hope Road SE known as

"Marbury Plaza" (the "Property"). The Debtor rents apartments to low income tenants, many of whom receive housing subsidies through various federal and state voucher programs.

14.     The value of the Property is approximately $100 million, based on an analysis of the Property's value completed by the specialized realtor engaged in this case to sell the Property. The Debtor has tens of millions of dollars of equity in the Property. The secured debt encumbering the Property is approximately $55 million.

15.     The Debtor is continuing in possession of its Property and the management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

16.     As of the date hereof, no trustee, examiner, or official committee has been appointed.

17.     A section 341 meeting of creditors was initially held on October 3, 2023, and has been further continued to November 2, 2023. *See* [Dkt. No. 62].

**A.     *The Superior Court Litigation Leads to the Bankruptcy Filing.***

18.     Prior to the filing of Debtor's bankruptcy, on July 1, 2021, the District filed a complaint in the Superior Court of the District of Columbia Civil Division against the Debtor and Vantage Management, the property management company at the Property at the time, initiating Case No. 2021-CA-2209-B (the "Superior Court Case"). On March 30, 2022, the Superior Court granted the District leave to amend the complaint to add Dr. Anthony Pilavas as a defendant.

19.     In the Superior Court Case, the District alleges violations of the Tenant Receivership Act, D.C. Code §§ 42-3651.01–3651.08, and the Consumer Protection Procedures Act, D.C. Code §§ 28-3901–3913 with respect to the present conditions at the Property and its management. The Superior Court Case complaint sought a permanent injunction requiring the defendants to restore the Property to habitability; damages, including restitution for tenants; the

appointment of a receiver; civil penalties; and an award of reasonable attorney's fees. Following initiation of the Superior Court Case, on July 20, 2021, the District filed a motion for preliminary injunctive relief, alleging emergent and dangerous conditions at the Property. Following litigation over this preliminary injunction motion, on March 2, 2022, the Superior Court issued a written consent order agreed to between the parties detailing certain repair and rehabilitation timelines for the Debtor to complete at the Property (the "Consent Order").

20.     The Debtor proceeded to make repairs to comply with the Consent Order. On March 25, 2022, the District filed a motion asking that MP PPH be directed to show cause as to why it should not be held in contempt for violation of the Consent Order. That motion was opposed, and denied by the Court (by the then presiding Judge, Heidi M. Pasichow) by Order dated October 18, 2022. However, on January 5, 2023, the District filed another motion seeking a show cause order and a finding that MP PPH was in civil contempt for failing to comply with the terms of the Consent Order. The Debtor opposed that motion, maintained that it had substantially complied with the terms of the Consent Order, and agreed that, to the extent it had missed certain deadlines within the Consent Order, that the deadlines were unreasonable or unattainable because of delays caused by others.

21.     Following an evidentiary hearing held on March 13, 14, and 15, 2023 at which only three tenants testified and the filing of post-hearing briefs and additional oral argument on April 13, 2023, the Superior Court on April 26, 2023, issued a *Memorandum Opinion and Order Granting Plaintiff's Renewed Motion to Adjudicate Defendant MP PPH, LC in Civil Contempt Finding the Debtor to be in Contempt in Relation to its Compliance with the Consent Order* (the "Contempt Order").

22.     The Contempt Order required, among other things, that rent for tenants would be subject to an "across-the-board rent abatement" for all tenants. This reduced rents by 50% at the Property retroactive to June 1, 2022 until the Debtor sufficiently completed repairs and other work to satisfy the Superior Court that it was in compliance with the terms of the Consent Order. The Contempt Order further provided that this rent reduction would increase to 60% on August 23, 2023, and, further, to 75% on October 23, 2023, if and until the Debtor completed the necessary work detailed in the Consent Order.

23.     Due to the issuance of the Contempt Order and failure of the Debtor to have it revoked within ninety (90) days, on July 26, 2023, the Debtor's primary secured creditor, Arbor Realty Participation, LLC ("Secured Creditor"), sent the Debtor a letter declaring an Event of Default under its Loan Agreement with the Debtor (the "July 26, 2023 Default Notice"). The July 26, 2023 Default Notice reserved the right of Secured Creditor to accelerate the debt owed by the Debtor pursuant to the Loan Documents, but did not do so in the July 26, 2023 Default Notice. Additionally, the District of Columbia Water and Sewer Authority previously asserted liens against the Property, with the total balance owing for water utilities believed to be approximately $641,234.25. The Property is also subject to several Wrongful Housing Liens and Certificates of Delinquent Costs issued by the D.C. Department of Buildings ("DOB") or its predecessor agency, the D.C. Department of Consumer and Regulatory, totaling approximately $38,978.00.

**B.      The Debtor Replaces Its Former Management Company with a New Management Company, Files Bankruptcy, Secures Interim Financing to Rehabilitate the Property, and Hires a Realtor to Pursue a Sale.**

24.     Since issuance of the Consent Order, the Debtor has diligently worked to complete the work required by that order, though several items remain outstanding.

25.     On August 3, 2023, the Debtor's parent company, PP & H, and the Debtor entered into a Commercial Balloon Credit Line Promissory Note. The original principal amount provided $5,000,000 to the Debtor (the "Original Note"). Following issuance of the Original note, on August 31, 2023 PP & H and the Debtor entered into an Amended and Restated Commercial Balloon Credit Line Promissory Note (the "Note"), increasing the maximum principal amount of the Note and available line of credit to $10,000,000. This loan provided debtor-in-possession financing in accordance with the terms of the Note (the "DIP Facility").

26.     PP & H has agreed to lend up to a total of $10,000,000.00 to the Debtor in accordance with the terms and conditions set forth in the DIP Facility. The proceeds of the loan by PP & H will be used to fund general the operations of the Debtor in accordance with, and limited to, the items set forth in, the budget (the "Budget") prepared in connection with the Debtor's motion to use cash collateral.

27.     The Budget reports that pre-petition, the Debtor spent a total of $5,006,948.00 on repair and remediation efforts required by the Consent Order during the period of January 1, 2023 to the filing date of August 31, 2023. [Dkt. No. 3-1, Ex. A]. This included over $1 million spent on elevator repairs and over $3 million spent on mold remediation. [Dkt. No. 3-1, Ex. A]. The Debtor's cash collateral budget includes funding for significant financial investment to continue these rehabilitation efforts. In the first month of this bankruptcy, the Debtor plans to spend nearly $2 million, which will include work on the elevators, the chillers in the building located at 2300 New Hope, repairing the laundry room, remediating mold, work by a mold hygienist, repairing plumbing, repairing the boiler, electrical repair, and build-backs required as a result of mold. [Dkt. No. 3-1, Ex. A].

28.     In total, from September 2023 to March 2024, the Debtor anticipates spending over $4.1 million on repair, remediation, and habitability concerns with the vast majority of this money to be spent before December 2023. [Dkt. No. 3-1, Ex. A]. These repairs will largely be paid as a result of new value provided to the Debtor from the DIP Facility.

29.     In addition to this work, the Debtor in August replaced its prior property management company (which had terminated its engagement following entry of the Contempt Order) and engaged Noble Realty Advisors, LLC, which is a firm with specialized experience in managing distressed properties.

30.     Although the Debtor intends to continue work to rehabilitate the Property in compliance with the orders issued in the Superior Court Case, the Debtor has elected to seek a sale of the Property. The Debtor has engaged Marcus and Millichap Real Estate Investment Services of North Carolina, Inc. ("M&M") to market and sell the Property. Marcus and Millichap specialize in complex commercial real estate sales to institutional investors. The Debtor, through M&M, has been aggressively market the Property and pursue Bankruptcy Court approval of a proposed sale. The Debtor will be using its best efforts to obtain a contract for sale of the Property by the end of the year, with approval of such sale through a confirmed plan and closing of such sale in early 2024.

C.     *The District Continues Litigating in the Superior Court Case Post-Petition and Files the Relief from Stay Motion.*

31.     Although the Superior Court Case complaint referenced a possible request for the appointment of a receiver, the District made no such request until August 24, 2023.

32.     Just before the filing of this bankruptcy case, on August 24, 2023, the District filed a motion for the appointment of a receiver in the Superior Court Case ("Receiver Motion").

33.     One week later on August 31, 2023, the Debtor filed its bankruptcy petition.

34.     Notwithstanding the filing of the bankruptcy petition, the District has not withdrawn its Receiver Motion, nor has the District agreed to stop its pursuit of this litigation despite the Debtor's request.

35.     The District's continued post-petition litigation necessitated the filing of an opposition to the Receiver Motion by the Debtor's Special Counsel on September 5, 2023. Simultaneous with the filing of that opposition, the Debtor filed a Suggestion of Bankruptcy in the Superior Court case.

36.     In order to continue its litigation seeking an appointment of a Receiver, the District on September 15, 2023 filed its Motion for Relief from Stay in this Court [Dkt. No. 32] (the "Stay Motion"). The Debtor filed its opposition to the Stay Motion on September 29, 2023, and an evidentiary hearing has presently been set on consideration of the Stay motion on October 26 and 27, 2023. *See* [Dkt. No. 66]. The Debtor is filing this Adversary Proceeding to seek injunctive relief prayed for in its Opposition to the Stay Motion.

**NEED AND SUPPORT FOR THE REQUESTED RELIEF**

37.     Section 105(a) of the Bankruptcy Code authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]." 11 U.S.C. § 105(a). The Second Circuit has not explicitly established the standard for reviewing a preliminary injunction issued under Section 105 of the Bankruptcy Code.

38.     Some courts evaluating a preliminary injunction under Section 105(a) in the context of bankruptcy proceedings have utilized a modified version of the traditional Rule 65 four factor test for obtaining injunctive relief: (1) whether there is a reasonable likelihood of successful reorganization; (2) whether there would be imminent harm to the estate and the bankruptcy process in the absence of an injunction; (3) whether the balance of harms weighs in favor of the injunction;

and (4) whether the public interest weighs in favor of the injunction. Other courts evaluating a preliminary injunction in the context of bankruptcy proceedings recognize that because injunctions under Section 105(a) are authorized by statute, they need not comply with traditional requirements of Rule 65. Thus, the court also may enjoin proceedings in other courts where it is satisfied that those proceedings would defeat or impair its jurisdiction with respect to the case before it, including if the proceedings would interfere with, impede, or threaten the bankruptcy case. Here, under either standard, the requested injunction is appropriate.

### A.     There Is a Reasonable Likelihood of a Successful Reorganization.

39.     "In the bankruptcy context, reasonable likelihood of success is equivalent to the debtor's ability to successfully reorganize. " *In re Union Tr. Philadelphia, LLC*, 460 B.R. 644, 660 (E.D. Pa. 2011) (quoting *In re Monroe Well Serv., Inc.*, 67 B.R. 746, 752 (Bankr. E.D. Pa. 1986)).

40.     Here, there is a reasonable probability the Debtor will be able to successfully sell the Property and confirm a chapter 11 plan. The Debtor has employed a nationally prominent real estate firm to sell the Property. [Dkt. No. 48]. The secured debt encumbering the Property is approximately $55 million, while the estimated value of the Property is $100 million. *See* [Dkt. No. 3 at 2, ¶3].

41.     Further, there is significant benefit to all parties-in-interest to selling the Property through a chapter 11 Plan. A Plan will avoid restrictions from the Tenant Opportunity to Purchase Act ("TOPA"), which would significantly delay the sales process outside of bankruptcy. *See* D.C. Code § 42–3404.02(c)(2)(E) (excluding bankruptcy sales). A Plan will also permit the parties to use 11 U.S.C. § 1146(a) to avoid unnecessary transfer taxes. The sale will likely generate sufficient proceeds to pay all creditors in full. In addition, the sale of the Property to new ownership through

a Plan provides a path to obtain secure and stable housing to the buildings' residents and resolving the litigation with the District.

42.     To demonstrate a reasonable likelihood of success, a movant need only show the prospect or possibility that he or she will succeed, and need not prove same with certainty. *In re LTL Mgmt., LLC*, 645 B.R. at 82 (citations omitted). The Debtor's strong prospects to confirm a plan more than meet this burden.

**B.      Absent an Injunction, The Debtors and the Bankruptcy Process Will Suffer Irreparable Harm and the Court's Jurisdiction Will Be Impaired.**

43.     When a bankruptcy is filed, the bankruptcy court has exclusive jurisdiction over all of the debtor's property and all claims or causes of action involving the retention of bankruptcy professionals. 28 U.S.C. § 1334(e). Congress intended "to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Hafen v. Adams (In re Hafen)*, 616 B.R. 570 (B.A.P. 10th Cir. 2020) (internal quotation marks and citations omitted).

44.     Exclusive bankruptcy court jurisdiction over the debtor's bankruptcy estate is incompatible with a receiver whose obligations and responsibilities run to the receivership court. *Stratesec, Inc.*, 324 B.R. at 158 (Bankr. D.D.C. 2004) ("[T]he debtor's property cannot simultaneously be under the control of both an active receivership and an active bankruptcy case, and §§ 305 and 543(d)(1)[1] implicitly require the bankruptcy court to decide which will be allowed to operate, and which will be suspended, the receivership or the bankruptcy case.") (cleaned up).

---

[1]     The normal rule is that a pre-petition receiver should deliver any property controlled to the trustee or debtor-in-possession upon the filing of a bankruptcy. 11 U.S.C. § 543(b)(1). Section 543(d)(1) permits a Court to permit "a custodian *to continue in possession*, custody, or control of . . . property" in certain circumstances when a bankruptcy case is filed. (emphasis added). Of course, there is nothing "to continue" where a receiver was not in place pre-petition.

45.     Bankruptcy trustees and receivers have different roles, duties, and loyalties: While the bankruptcy trustee/debtor-in-possession is a representative of the estate, a receiver is appointed by a court to act as the representative of that court to manage, control, and deal with property that is the subject of a specific controversy. *In re Halvorson*, 607 B.R. 680 (Bankr. C.D. Cal 2019) (citing 4 Pomeroy's Equity Jurisprudence § 1330). The appointment of a receiver transfers property, effectuating a transfer of control out of the hands of a property's owner and into the hands of a receiver. *In re Wilson*, No. 2:12-AP-01317-RK, 2022 WL 4232401, at *2 (Bankr. C.D. Cal. Sept. 13, 2022) (citations omitted).

46.     This transfer is incompatible with the bankruptcy court's power to exclusively control the property of the estate and the conduct of the debtor-in-possession or trustee. "As debtor-in-possession, the debtor serves with the powers of a trustee. 11 U.S.C. § 1107(a). It would be inconsistent with 11 U.S.C. § 105(b) to appoint a receiver to take possession of the estate's sole asset when the debtor is attempting to use that asset to devise a reorganization." *In re 1301 Connecticut Ave. Assocs.*, 117 B.R. 2, 11 (Bankr. D.D.C. 1990), *aff'd*, 126 B.R. 1 (D.D.C. 1991) (citing *In re Memorial Estates, Inc.*, 797 F.2d 516 (7th Cir. 1986) (where automatic stay had, apparently, been lifted to allow foreclosure suit, receiver in foreclosure suit permissible but a receiver is not permissible when it would emasculate the trustee's role); *In re Cassidy Land & Cattle Co., Inc.*, 836 F.2d 1130, 1133 (8th Cir.) (procedural history omitted)).

47.     Due to the interference with control over the estate, allowing an individual to "continue indefinitely as receiver thus appears to be inconsistent with the Bankruptcy Code." *Stratesec*, 324 B.R. at 157 (citing *In re Plantation Inn Partners*, 142 B.R. 561, 564

---

It is also difficult to see how the interests of creditors and equity holders could be best served by anything other than allowing a chapter 11 plan process to go forward that is expected to pay all creditors 100%. *See* 11 U.S.C. § 543(d)(1) (requiring consideration of the best interests of creditors and equity holders).

(Bankr.S.D.Ga.1992). That is why the bankruptcy court has "to decide which to suspend—the receivership or the bankruptcy case." 8A C.J.S. Bankruptcy § 417.

48.    In *Stratesec*, Bankruptcy Judge Teel recognized the incompatibility of a state court receivership and the bankruptcy court's ability to oversee a case. Congress understood this incompatibility as well. Section 105 of the Bankruptcy Code sets forth the powers of the bankruptcy courts and contains a broad authorization for those courts to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." The only statutory exception to this mandate is provided by Section 105(b), which provides that "[n]otwithstanding subsection (a) of this section, *a court may not appoint a receiver* in a case under this title." (emphasis added).

49.    Section 105(b) prevents a bankruptcy court from allowing the indefinite service of a state-court receiver. *See Plantation Inn Partners*, 142 B.R. at 564 ("To permit the [r]eceiver to indefinitely remain . . . would circumvent the prohibition of Section 105(b) against the appointment of receivers in lieu of a debtor-in-possession or trustee.").

50.    The legislative history makes clear that Congress meant what it said. The Senate Report for Section 105 provides, "[T]he bankruptcy judge is prohibited from appointing a receiver in a case under title 11 *under any circumstances*." Senate Report 95-989 (95th Cong., 2nd Sess., 1978) (emphasis added). This mandate is because Congress understood the need to have clear oversight over the management of a case, which cannot be circumvented by the bankruptcy court allowing a state court to appoint a receiver instead: "[T]he [Bankruptcy] Code contemplates that the long-term administration of a Chapter 11 case will be managed by a trustee or debtor-in-possession, not a hybrid created by judicial fiat." *Plantation Inn Partners*, 142 B.R. 561, 564 (Bankr. S.D. Ga. 1992) (citing Collier on Bankruptcy, ¶ 1104.01[e] at 1104–29, 30)).

51.     The District's request to pursue the appointment of a receiver seeks a remedy that is fundamentally inconsistent with this Court's oversight of the bankruptcy case. The Government does not argue that bankruptcy case should be dismissed but it seeks the appointment of a receiver, which if granted in state court, would need to be immediately suspended, if the bankruptcy case goes forward. *See Stratesec, Inc.*, 324 B.R. at 158. Such litigation would be a wasteful and futile gesture. The District's motion can be denied on that basis alone.

**C.      The Balance of Harms Weighs in Favor of an Injunction.**

52.     In the bankruptcy context irreparable harm is determined by considering the potential impact on the Debtor, specifically "whether the litigation could interfere with the reorganization of the debtor." *In re W.R. Grace & Co.*, 115 F. App'x 565, 570 (3d Cir. 2004) (citing *In re A.H. Robins Co.*, 828 F.2d 1023, 1025 (4th Cir. 1987)); *see also In re Johns–Manville*, 26 B.R. 420, 436 (Bankr. S.D.N.Y. 1983) (finding that bankruptcy courts have issued injunctions extending the automatic stay "to enjoin acts . . . which would frustrate the statutory scheme or impact adversely on a debtor's ability to formulate a plan or on the debtor's property") (citations omitted).

53.     The Bankruptcy Court provides a far superior forum than the Superior Court for addressing the issues presented by this case. Providing for the protection of creditors and the use of the Bankruptcy Code to efficiently administer assets is a reason to deny an effort to appoint a receiver. While a receiver may be appointed to protect an asset, a receiver's function is a limited one. More can be accomplished in a successful chapter 11, which "should result in improved prospects for recovery by [creditor classes] by maintaining the [real estate] as a going concern." *Plantation Inn Partners*, 142 B.R. at 565. These business factors alone are a reason to deny a request to seek a state court receiver. *Id.*

54.    The goal of this Case is to sell the Property and, using the expertise of a nationally focused real estate team, find a buyer reasonably acceptable to the District. The Bankruptcy Code supplies the tools to sell the Property through a confirmed plan. That path provides the opportunity to permanently resolve the concerns related to the Property and ensure safe and secure housing for thousands of D.C. residents.

55.    The appointment of a receiver would be an extraordinary step backward. At this juncture, the District has not even identified a proposed receiver. Any receiver that is identified, found to be qualified for the massive task of managing this 674-unit complex with approximately 2,500 residents, and appointed would, at best, do minimal work given the efforts already being undertaken by the Debtor to rehabilitate and sell the Property. The rents generated by the Property alone do not provide sufficient income to be able to make the repairs budgeted for by the Debtor. The receiver would have few options other than to seek a sale of the Property, file a petition in bankruptcy, or to seek a loan from the District of Columbia. *See* D.C. Code § 42–3651.06(j) (setting forth options for appointed receivers where the owner of the property lacks sufficient funds to pay for rehabilitation). Here, the Debtor has already filed a bankruptcy petition, obtained a loan, and hired a realtor to sell the Property.

56.    The litigation in the Superior Court harms these efforts. Every dollar spent on legal fees in that proceeding is less money available to make repairs to the Property or pay tenant claims. Further, the rent reductions substantially reduce the funds available to make necessary repairs and make it more difficult to sell the Property.

57.    Practically, the appointment of a receiver at this time runs contrary to the goals of the District and the Debtor to continue rehabilitating the Property while seeking a sale. A receiver would immediately pause rehabilitation efforts during the transition as the receiver takes control.

By the time a receiver takes control of rent proceeds, hires professionals, and reviews and makes his or her plan for the Property, the Property would likely to have been under contract had the bankruptcy been permitted to proceed.

58.  Here, both the receivership litigation and continued imposition of the rent reductions irreparably harm the Debtor. As this Court recognized in *Stratesec*, a receiver taking control and possession of the bankruptcy estate is incompatible with a chapter 11 reorganization. 324 B.R. at 157.

59.  The continued imposition of forced rent reductions also threatens the reorganization and is incompatible with the Bankruptcy Code. Making repairs and providing upkeep to two eleven-story buildings and surrounding garden units requires money. The current loss of 60% of the Debtor's rental revenues decrease the funds available to allow the Debtor to operate, make repairs, and rehabilitate the Property. This reduced income to the estate was imposed, in significant part, as a method to compensate tenants for pre-petition claims against the Debtor. [Contempt Order at 30–31]. This competes with the claims settlement process that is at the core of the statutory scheme of chapter 11 plans. Plus, the reductions harm the process for selling the real estate. Among the factors that determine the value of a commercial property in a real estate sale is the value of the cash flows generate by the rents. The rent restrictions make it difficult for potential buyers to estimate the revenue potential of the Property.

60.  Allowing a receivership, the rent reductions, or continuing litigation over those items harms the Debtor. That harm is irreparable because the Debtor does not get multiple chances to confirm a chapter 11 plan or sell the Property. As a result, if the Debtor does not obtain relief from those conditions to enable it to pursue a swift and orderly sale of, the opportunity provided

by this chapter 11 case will be forever lost. This factor weighs in favor of this Court entering an injunction.

61.     In addition, in considering the entry of an injunction under 11 U.S.C. § 105(a), the Court must consider whether the injunction would provide harm to the Government that exceeds the harm to the Debtor. However, a short-term delay in proceeding with the State's claims does not exceed the Debtor's interest in a successful reorganization. *In re LTL Mgmt., LLC*, 645 B.R. at 84.

62.     The D.C. Government undoubtedly has an interest in monitoring and ensuring that the Debtor's units are safe and habitable, and the Debtor is not seeking to enjoin or interfere with that process. But neither the receiver litigation nor the rent reductions are required for the District to fulfill these interests. The Debtor is undertaking extensive efforts to rehabilitate the Property, including injecting millions of dollars in additional money to support these efforts, which exceed the powers and abilities a receiver would have. The transparency of the bankruptcy system provides the District with plenty of tools to oversee rehabilitation efforts and bring any issues to this Court's attention. The rent reductions have constrained the funds available to the Debtor, which are needed for the rehabilitation efforts. Allowing the Debtor to receive full rents that can be devoted to the Property's upkeep and stabilization does not harm the District. This Court's oversight of the cash collateral budget and the accounting provided by the monthly operating reports will provide all parties-in-interest with the ability to ensure these monies are used appropriately.

**D.     *Public Interest Weighs in Favor of an Injunction.***

63.     The public interest is served by allowing this Bankruptcy Case to succeed. Thousands of tenants rely on the Property for housing. The Debtor is actively engaged in

improving and selling the Property and has well qualified professionals currently engaged in those rehabilitation and sale efforts. Appointing a receiver will likely displace those professionals or require the receiver to hire new professionals will essentially restart the process the Debtor is already engaged in. This delay harms the public. Similarly, the ability to use full rents from the Property for its rehabilitation provides additional resources to improve the living conditions of the residents, benefiting the Property and the surrounding community. The public interest favors a stay on efforts to appoint a receiver or continued post-petition restrictions on the ability of the Debtor to collect rents.

## CLAIM FOR RELIEF

### COUNT ONE
**(Injunction Staying Litigation Outside the Scope of the Police
and Regulatory Power Exception to the Automatic Stay
Pursuant to Section 105(a) and 362 of the Bankruptcy Code)**

64.    The Debtor repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

65.    A Bankruptcy Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

66.    A Bankruptcy Court may, in its discretion, issue injunctive relief under section 105 of the Bankruptcy Code in order to restrain activities that threaten the reorganization or restructuring process or impair the court's jurisdiction with respect to the case before it.

67.    There is a reasonable likelihood of a successful reorganization and restructuring process. The Debtor is substantially more likely to reorganize with the requested injunction in place.

68.    Absent the requested injunction, the continued prosecution of the litigation against the Debtor, including efforts to appoint a receiver in the Superior Court Case and the continued

imposition of the rent reductions pursuant to the Contempt Order, will cause the Debtor and its

reorganization efforts to suffer immediate, irreparable harm.

69.     The balance of hardships weighs in favor an injunction, as the irreparable harm to

the Debtor, its estates, and the restructuring process that would result from the denial of an

injunction outweighs any potential harm to the District attributable to a modest delay in the

prosecution of the pre-petition litigation against the Debtor.

70.     The requested injunctive relief will serve the public interest by allowing this Court

to retain its exclusive jurisdiction over the Chapter 11 Cases and the Debtor's estate, by providing

creditors with a transparent restructuring process, and by promoting a value-maximizing sale and

reorganization process for stakeholders.

71.     Absent the requested injunction, the continued prosecution of the pre-petition

litigation against the Debtor would impair this Court's jurisdiction with respect to these Chapter

11 Cases.

72.     Injunctive relief pursuant to section 105 of the Bankruptcy Code enjoining pre-

petition litigation against the Debtor is necessary and appropriate under the present circumstances.

73.     No prior application for the relief requested herein has been made to this Court or

any other court, except to the extent it has been asked for in the Debtor's Opposition to the District's

Stay Motion set for evidentiary hearing on October 26-27, 2023.

## PRAYER FOR RELIEF

WHEREFORE, the Debtors respectfully request that this Court enter judgment in their

favor and request relief as follows:

74.     (a) enjoin the District from continued litigation of those portions of the litigation

outside the scope of the police and regulatory power, including the commencement or continuation

of their active judicial, administrative, or other actions or proceedings against the Debtor that were

or could have been commenced before the commencement of these Chapter 11 Cases, if not

otherwise subject to the automatic stay imposed by section 362 of the Bankruptcy Code, and

including, but not limited to, the District's efforts to appoint a receiver over the Property and

continued imposition of the rent reductions pursuant to the Contempt Order.

75.     (b) all such other relief as the Court finds just and equitable

Dated:  October 25, 2023                    Respectfully submitted,


                                            */s/ Joshua W. Cox*
                                            Marc E. Albert, No. 345181
                                            Bradley D. Jones, No. VA 68
                                            Tracey M. Ohm, No. 982727
                                            Joshua W. Cox, No. 1033283
                                            Ruiqiao Wen, No. 1743500
                                            STINSON LLP
                                            1775 Pennsylvania Ave., N.W., Suite 800
                                            Washington, DC 20006
                                            Tel. (202) 785-9100
                                            Fax (202) 572-9943
                                            marc.albert@stinson.com
                                            brad.jones@stinson.com
                                            tracey.ohm@stinson.com
                                            joshua.cox@stinson.com
                                            ruiqiao.wen@stinson.com
                                            *Attorneys for*
                                            *MP PPH LLC,*
                                            *Debtor and Debtor-In-Possession*