The order below is hereby signed.

Signed: March 8 2024

Elizabeth L. Gunn
U.S. Bankruptcy Judge



# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLUMBIA

| In re: | Case No. 23-00246-ELG |
|---|---|
| **MP PPH LLC,** Debtor. | Chapter 11 |

## ORDER ON APPLICATION TO EMPLOY

On January 10, 2024, the Court held an evidentiary hearing (the "Hearing") on the *Application of the Official Committee of Unsecured Creditors for an Order Approving the Employment and Retention of Pillsbury Winthrop Shaw Pittman LLP as Legal Counsel* (the "Application"). ECF No. 119. At the conclusion of the Hearing, the Court found that Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") represents or holds no interest adverse to the Debtor's estate and is disinterested in this case, thus meeting the requirements under § 1103(a)[1] for employment as counsel for the Official Committee of Unsecured Creditors of MP PPH LLC (the "Committee"). The Court took under advisement the question of whether to grant the further request from Pillsbury in the Application for pre-approval of their proposed hourly billing rates in this matter as reasonable pursuant to § 328(a), which authorizes employment of a professional

---

[1] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

1

person under § 1103 "on any reasonable terms and conditions of employment, including . . . on an hourly basis . . . ." For the reasons stated herein, the Court grants the Committee's application to retain Pillsbury under § 1103(a) effective as of November 13, 2023 but denies the request for a determination of reasonableness under § 328(a).

## I.    Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052.

## II.    Background

*a)    Legal Standard*

MP PPH, LLC (the "Debtor") filed a voluntary chapter 11 petition on August 31, 2023. The Debtor's primary asset is a multiple building, 674-unit, distressed apartment complex in southeast D.C. (the "Property"). The Debtor's case is focused on the rehabilitation, renovation, and ultimate sale of the Property in order to realize the perceived equity in the Property to pay its creditors. The Debtor's unsecured creditors are composed primarily of service providers and tenants of the Property. The § 341 meeting of creditors was initially convened on October 3, 2023 and concluded on November 2, 2023. On October 26, 2023, the Office of the United States Trustee (the "U.S. Trustee") initially appointed an unsecured creditors committee. The initial appointment was withdrawn on November 6, 2023, and the Committee as currently constituted was appointed on November 9, 2023. On November 14, 2023, Pillsbury filed a notice of appearance as proposed counsel for the Committee in the Debtor's case. On November 22, 2023, Pillsbury filed the

2

Application on negative notice. A timely objection to the Application was filed by the Debtor's post-petition lender PP & H Realty, LLC (the "DIP Lender"),[2] and a hearing was set for January 10, 2024.

The Application seeks approval of the Committee's employment and retention of Pillsbury pursuant to §§ 328(a) and 1103(a) effective as of November 13, 2023. Pillsbury's engagement agreement with the Committee is attached to the declaration of Patrick Potter attached to the application as Exhibit 1. Application, ECF No. 119-1. As filed, the Application seeks not only a determination that Pillsbury is sufficiently disinterested as required by § 1103(b) (mandatory for the approval of employment of counsel), but also the approval of all terms of its proposed engagement agreement as "reasonable terms and conditions of employment" on an hourly basis under § 328(a) (discretionary pre-approval terms of employment). Specifically, Pillsbury requests the Court exercise its discretion to "approve the Committee's retention of Pillsbury, approve Pillsbury's hourly rates and expense reimbursement schedule, and approve Pillsbury's proposed staffing of this engagement as contemplated herein."[3] Application, ¶ 8, ECF No. 119. While the Application requests approval of the terms of the engagement, Pillsbury acknowledges that it must seek compensation in "such amounts as this Court may allow" and will "apply to the court for allowance of compensation and reimbursement of expenses . . . on an hourly basis" plus reimbursement of costs. *Id.* at ¶ 7, 24, ECF No. 119.

The DIP Lender's objection to the Application does not question whether Pillsbury is sufficiently disinterested in this case as required by § 1103, but instead focuses on the request for the discretionary approval of the reasonableness of Pillsbury's proposed hourly rates and staffing.

---

[2] PP & H Realty, LLC'S Resp. to App. of the Official Committee of Unsecured Creditors for an Order Approving the Emp. & Retention of Pillsbury Winthrop Shaw Pittman LLP as Legal Counsel, ECF No. 152.

[3] For purposes of this Opinion, references to the reasonableness of hourly rates encompasses both the requested pre-approval of hourly rates and the pre-approval of staffing.

At the Hearing, the Debtor and the U.S. Trustee raised oral objections to the request to approve Pillsbury's of billing rates in the Application as reasonable, asserting that such questions are more appropriately considered at the time a fee application is filed under the standards set forth in § 330.

Patrick Potter, the primary Pillsbury attorney involved in this case for the Committee, testified in support of the Application. However, Pillsbury did not offer any evidence at the Hearing from its client (the Committee) other than the declaration of Desmond Qualey, the chairperson of the Committee, attached to the Application (the "Qualey Declaration"). ECF No. 119–2. Notably, the Qualey Declaration is silent as to the basis or reason for the selection of Pillsbury, the necessity or basis for the decision to seek approval of the employment of Pillsbury under § 328(a), or any other support for the employment of Pillsbury on the specific terms and conditions as set out in the Application. The only evidence on these matters came from the applicant itself—Pillsbury. At the conclusion of the Hearing the Court found that Pillsbury met the necessary standard under § 1103 and Bankruptcy Rule 2014 as not having an adverse interest in the case, but deferred a finding as to the request for approval of all the proposed terms of employment, specifically the request for approval of all terms under § 328(a).

### III.     Discussion

It is the obligation of bankruptcy courts to approve the terms of employment of professionals in accordance with the terms of the Bankruptcy Code. *See, e.g.*, *In re Boomerang Tube, Inc.*, 548 B.R. 69, 75 (Bankr. D. Del. 2016). Professionals seeking employment must disclose the terms and conditions of any compensation agreement. Fed. R. Bankr. P. 2014(a). In general, attorneys seeking approval of their compensation arrangement under § 328(a) must unambiguously specify that request in their employment application. *See Circle K. Corp. v. Houlihan, Lokey, Howard & Zuikin, Inc. (In re Circle K Corp.)*, 279 F.3d 669, 673–74 (9th Cir.

4

2002). The parties who file applications seeking to employ professionals under § 328(a) have the burden of proof that the proposed terms of employment of the professional are reasonable and should be approved. *See In re Energy Partners Ltd.*, 409 B.R. 211, 224 (Bankr. S.D. Tex. 2009).

An engagement agreement filed with an employment application is a contract subject to objection by other parties and ultimately subject to approval or modification by the Court. *Boomerang Tube*, 548 B.R. at 74, 75; *see also In re Fed. Mogul-Global*, 348 F.3d 390, 397–98 (3d Cir. 2003) (holding bankruptcy could approve professional's employment on terms and conditions different from those requested by the committee). As a result, bankruptcy courts regularly examine proposed fee arrangements when deciding whether to approve employment applications and may review an application for reasonableness at the outset of the engagement. *See Danner v. United States Tr. (In re Danner)*, 2012 Bankr. LEXIS 3634, *13–14 (B.A.P. 9th Cir. July 31, 2012). The Bankruptcy Code gives bankruptcy courts broad discretion over whether a proposed fee arrangement is or is not reasonable or appropriate under the circumstances of each case. *Id.* at *14 ("The operative words [of § 328(a)] are 'may' and 'reasonable.'") (citing *Official Comm. Of Unsecured Creditors v. Harris (In re Sw. Food Distribs., LLC)*, 561 F.3d 1106, 1112 (10th Cir. 2009)); *see also Harold & Williams Dev. Co. v. United States Trustee (In re Harold & Williams Dev. Co.)*, 977 F.2d 906, 909 (4th Cir. 1992) (finding that the Bankruptcy Code gives bankruptcy courts broad discretion over the appointment of professionals by empowering the court to approve the candidates selected). If bankruptcy courts lacked discretion when it comes to the approval of fee arrangements, they would "simply be a rubber stamp for selections of counsel . . . by participants in bankruptcy proceedings." *Harris*, 561 F.3d at 1112.

But § 328(a) is not the source of the authority under which the committee can employ a professional, that authority is found in § 1103. 11 U.S.C. § 1103(a); *see In re Energy Partners,*

5

*LTD.,* 409 B.R. 211, 223 (Bankr. S.D. Tex. 2009). Section 328(a) states the types of terms under which a debtor or committee can employ a professional, but if such terms are not reasonable, the Court may exercise its discretion and deny the employment on such terms. *See In re Energy Partners, LTD.,* 409 B.R. at 223. However, once a bankruptcy court approves a professional's employment and proposed compensation arrangement under § 328(a), any later inquiry into the reasonableness of fees at the conclusion of employment is limited to whether the "terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a); *Danner*, 2012 Bankr. LEXIS at *14–15; *see also In re Feilitech US LLC*, Case No. 23-10599-SDM, 2023 Bankr. LEXIS 2997 (Bankr. N.D. Miss. Dec. 21, 2023) (holding that approval of billing rates in employment application required heightened standard for review of reasonableness in fee application). As a result, the Court does not take § 328(a) applications lightly. *Energy Partners*, 409 B.R. at 224.

Approval of employment under § 328(a) provides comfort to professionals that they will be paid as they bargained for, but also raises concern that one cannot foresee all services or predict the actual difficulty of such services at the outset of a case. *See In re Frontier Communs. Corp.,* 623 B.R. 358, 362 (Bankr. S.D.N.Y. 2020). As such, § 328(a) works well for contingency or flat fee arrangements, but the application of § 328(a) is much more complex with respect to the issue at play in this situation, i.e., the evaluation of an employment application containing a request to pre-approve hourly rates as reasonable before services are rendered or complete. *See id.* If the Court approves a billing rate at the time of employment, then the Court's analysis of an application for compensation is limited to a review of the hours billed for reasonableness under § 330(a). *See Asarco L.L.C. v. Barclays Capital, Inc. (In re Asarco, L.L.C.)*, 702 F.3d 250, 261 n.10 (5th Cir.

6

2012) (citing *In re Confections by Sandra, Inc.*, 83 B.R. 729, 733 (B.A.P. 9th Cir. 1987)); *see also Feilitech,* 2023 Bankr. LEXIS 2997, at *19-20 (finding authority to evaluate fee application on reasonableness limited to number of hours where employment order approved hourly rates under § 328(a)); *Boomerang Tube*, 548 B.R. at 72 ("section 328 is an express exception to section 330 and . . . section 328 allows compensation to professionals . . . that would otherwise not be available under section 330"). The purpose of requiring court approval of employment applications is to enable the Court to control administrative expenses. *Harris,* 561 F.3d at 1112 (citing *In re Sound Radio, Inc.*, 145 B.R. 193, 202 (Bankr. D.N.J. 1992)). In evaluating an employment application, the Court must consider whether the requested fee structure is reasonable given the size and circumstances of the case and whether the terms of the proposed engagement reflect the market terms for similar services in similar cases. *See In re Frontier Communs. Corp.,* 623 B.R. at 363–64.

Courts have applied a variety of factors in considering whether an applicant has carried its burden to show reasonableness under § 328(a) including:

i. Did the parties engage in arms-length negotiations to derive the terms? Were the parties involved in the negotiation entities with equal bargaining power?
ii. Is the retention as proposed in the best interest of the estate or necessary to the administration of the case?
iii. Is there opposition to the retention and/or the proposed terms of retention?
iv. Is the projected amount of fees reasonable given the size, circumstances, and posture of the case?
v. Do the proposed terms reflect the marketplace for the proposed services?

*See Frontier*, 623 B.R. at 363–64; *Energy Partners*, 409 B.R. at 226. In addition, in this Circuit, in considering the reasonableness of an attorneys' billing rate, a court must consider, at a minimum, (i) the attorneys' billing practices; (ii) the attorneys' skill, experience, and reputation; and (iii) the prevailing market rates in the relevant community. *Covington v. District of Columbia*, 57 F.3d

7

1101, 1107 (D.C. Cir. 1995); *see also DL v. District of Columbia*, 924 F.3d 585, 588 (D.C. Cir. 2019).

      b)      *The Committee Has Not Met its Burden of Proof*

There is no challenge to Pillsbury's disinterestedness, competency to serve as counsel, or eligibility to serve as counsel under § 1103(a) to the Committee in this case. The question is whether the Court should exercise its discretion and approve Pillsbury's request for approval of all the terms and conditions of their engagement agreement under § 328(a) at the time of approval of their employment. The Court will apply each of the identified factors to determine whether the Committee has met its burden to establish the reasonableness of the request in the Application.

      i)      *Negotiation of the terms of the engagement*

Mr. Potter's testimony described the solicitation process whereby Pillsbury was selected as proposed counsel for the Committee. The record is devoid of any evidence of what negotiations, if any, were engaged in between the Committee and Pillsbury after their selection as to the terms of their engagement letter, specifically with respect to the hourly rates requested herein. The testimony on the requested rates implied the opposite as to any negotiations. In his presentation to the Committee Mr. Potter unilaterally chose to offer a discount on Pillsbury's "regular" rates and obtained special permission to offer a larger discount as to his rate. But these reductions were calculated and obtained *prior* to Pillsbury being selected by the Committee. There is no evidence that there were ever any post-engagement negotiations as to the terms of Pillsbury's engagement.

The lack of any evidence (except the limited Qualey Declaration) from any member of the Committee in support of the Application raises great concern with the Court. This is heightened by the fact that it appears it was never contemplated by Pillsbury to present evidence from a member of their client at the Hearing—the pre-hearing exhibit and witness list included solely Mr.

8

Potter as a potential witness. As a result, the Court is faced with considering the Application in light of what could be characterized as a self-serving evidentiary presentation by Pillsbury not on behalf of the Committee, but arguably, instead, on behalf of Pillsbury. Therefore, the Court finds that the Committee has not met its burden of proof of as to whether the engagement agreement was reached as a result of arms-length negotiations between parties with equal bargaining power, and this factor weighs against approval under § 328(a).

    *ii)*  *Best Interest of the Estate or Necessary to the Administration of the Case*

It is uncontested that the administration of any chapter 11 case is enhanced when parties are represented by competent counsel. Pillsbury certainly has the experience and skills to serve as counsel to the Committee. The question is whether the Committee has met its burden to establish that the Court should pre-approve approve Pillsbury's billing rates at the time of approval of the employment. Other than the enumerated general categories of services set forth in the engagement agreement, there is little other evidence to assist the Court in predicting to what extent the services that Pillsbury will render will provide a tangible, identifiable, and/or material benefit to the estate. *See Energy Partners*, 490 B.R. at 229–30. Thus, this factor weighs against approval of the Application under § 328(a).

    *iii.*  *Opposition to Retention*

As enumerated herein, the Debtor, the DIP Lender, and the U.S. Trustee each oppose the approval of Pillsbury's engagement under § 328(a). Thus, this factor weighs against approval of the Application under § 328(a).

9

####    iv.     Reasonableness of Projected Fees

Unlike a flat or contingency fee case, the Committee did not offer a projection of fees that may be incurred in this case, nor was any evidence introduced as to any projections.[4] As a result, the Court must predict on little to no evidence whether by rendering services under the terms of the engagement agreement, Pillsbury's fees would be reasonable. This is an inquiry more appropriately addressed in hindsight, as part of a more fulsome evaluation of the reasonableness of requested compensation under § 330. Therefore, the Court finds that the Committee has not met its burden of proof on this element. The Court does not make a determination whether the hourly rates or compensation billed under the engagement agreement is or is not reasonable, just that there is insufficient evidence at this juncture to make such a determination. As a result, this factor weighs against approval of the Application under § 328(a).

####    v.     Attorneys' Billing Practices and Skill, Experience, and Reputation

As stated, *infra*, there is no question that Pillsbury has the reputation of a firm with the skill and experience to represent the Committee. Other than general testimony that Mr. Potter supervises the cases and reviews invoices prior to submission of a fee application, there was scant evidence presented as to the intended staffing and billing practices of Pillsbury on behalf of the Committee. Further, these factors are almost impossible to evaluate on a case-by-case basis prospectively for standard hourly based engagements. Accordingly, there is insufficient evidence at this time in the case to fully evaluate these factors, and they are either neutral or weigh against approval of the Application under § 328(a).

---

[4] Mr. Potter did testify that in the period through the end of December 2023, initial, unedited bills showed Pillsbury had recorded over $100,000 towards services in this case.

10

*vi.    Engagement Agreement Reflects Normal Business Terms in the Market*

The evidence presented regarding whether the rates requested by Pillsbury in the Application reflect normal market terms was inconclusive. The Committee introduced evidence on the hourly rates of select firms it considers competitors and rates approved in comparable cases for such firms in support of its requested rates. The Debtor, DIP Lender, and U.S. Trustee point to the hourly rates disclosed for all other law firms in this case in support for the argument that the Application seeks rates above the market. However, because the Court finds that each of the other factors weigh against approval of the terms of employment under § 328(a), the Court does not need to reach this question at this point. The Court agrees with the Debtor, DIP Lender, and U.S. Trustee that a determination of the reasonableness of the rates charged in this case by Pillsbury is more appropriate under a complete analysis of requested fees upon application to the Court as required by § 330. 11 U.S.C. § 330(a)(3)(B) (listing the rates charged for services as one of the factors in determining whether compensation requested by a professional is reasonable). Thus, the Court makes no finding as to this factor.

## IV.    Conclusion

Upon consideration of the Application, the evidence presented at the Hearing, the arguments of counsel, in an exercise of its discretion, and for the reasons set forth herein, the Court hereby:

1)    **APPROVES** the Committee's employment of Pillsbury as its legal counsel for the purposes identified in the Application under § 1103 and Bankruptcy Rule 2014 effective November 13, 2023.

2)    **DENIES** Pillsbury's request for approval of the terms of the engagement agreement under § 328(a). Reasonable compensation shall be approved upon application pursuant § 330.

3)      The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

[Signed and dated above.]

Copies to: recipients of electronic notifications.