The order below is hereby signed.

Signed: March 12 2024



Elizabeth L. Gunn
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re:** | **Case No. 23-00246-ELG** |
| **MP PPH LLC,**<br>**Debtor.** | **Chapter 11** |
| **MP PPH LLC,**<br>**Plaintiff,**<br><br>**v.**<br><br>**District of Columbia,**<br>**Defendant.** | **Adv. Pro. 23-10032-ELG** |

## <u>MEMORANDUM OPINION</u>

This case requires the Court to determine the extent to which the automatic stay of 11 U.S.C. § 362(a)[1] impacts the enforcement of a prepetition state court order of contempt arising out of an action under the Bankruptcy Code's police and regulatory exception of § 362(b)(4). In December 2023, the Court held a multi-day evidentiary hearing (the "Hearing") on the *Debtor's Motion to Address Procedures for Tenant Claims Issues and to Clarify the Order Resolving the Automatic Stay* (ECF No. 109) (the "Motion to Clarify"), the Debtor's *Motion for a Preliminary*

---

[1] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

*Injunction Pursuant to Section 105(a) of the Bankruptcy Code* (the "Motion for Preliminary Injunction"),[2] and the oppositions filed thereto. At the conclusion of the Hearing the Court issued an oral ruling finding that the portion of the state court contempt order establishing ongoing enforcement of rent abatements beginning December 1, 2023 violates the automatic stay because it represents the immediate collection of a prepetition judgment, but otherwise the § 362(b)(4) police and regulatory exception of the automatic stay was applicable. The Court deferred judgment and retained jurisdiction on the same question as to any rent abatements enforced between the Petition Date and November 30, 2023.[3] This Memorandum Opinion memorializes the Court's oral ruling and supplements the Order entered December 18, 2023.[4] To the extent there is any inconsistency between the oral ruling, Order, and this Memorandum, this Memorandum shall control.

## I.      Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.[5]

## II.      Background

### a.      *The Marbury Plaza Apartments*

MP PPH, LLC (the "Debtor" or "MP PPH") owns a 100 percent fee simple interest in a 674-unit apartment complex located in the 2300 block of Good Hope Road SE commonly known

---

[2] *MP PPH LLC v. District of Columbia (In re MP PPH LLC)*, No. 23-00246-ELG, Adv. Pro. No. 23-10032 (Bankr. D.D.C. Oct. 25, 2023), ECF No. 3.

[3] *See* Tr. Dec. 11, 2023, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Dec. 12, 2023), ECF No. 166.

[4] Order, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Dec. 18, 2023), ECF No. 177.

[5] *See* Fed. R. Bankr. P. 7052.

as the Marbury Plaza apartments (the "Property"). As of the date of the Hearing, the Debtor had approximately 2,500 tenants, including both market rate and subsidized tenants throughout two main apartment towers and seven smaller outbuildings. The buildings share a common infrastructure, including such amenities as a heating and hot water plant, parking areas (including garages), an on-site convenience store, a swimming pool, laundry facilities on each floor, and a community room. Despite the multiple buildings, the Property is maintained and treated as a single complex. Shortly before the filing of this case the Debtor retained a new property management company, Noble Realty Advisors, LLC ("Noble"). In the early months of this case, the Debtor and Noble worked to repair, rehabilitate, and prepare to sell the Property to a third party. As of the date of the Hearing, the Debtor (with the assistance of Noble and its post-petition lender PP & H Realty, LLC (the "DIP Lender")) remained in control of the Property, continued to collect tenant rents, and continued to pay ongoing operating costs and capital improvement costs under the terms of the Court's orders approving the use of cash collateral and the Debtor's debtor-in-possession financing.

  *b.*  *The Superior Court Action*

  In the years since the Debtor's acquisition of the Property in 2015, it has been issued numerous violations (the "Violations") of the District of Columbia's Housing and Property Maintenance Codes. Many of the Violations remained partially or fully unresolved or unremedied as of the Hearing. As a result of the conditions at the Property including the ongoing and unremedied Violations, on July 2, 2021, the District brought suit (the "Superior Court Action") against the Debtor in the Superior Court for the District of Columbia (the "Superior Court").[6] In

---

[6] *District of Columbia v. MP PPH, LLC*, Case No. 2021-CA-002209-B (D.C. Super. Ct. July 1, 2021). There is extensive litigation in the Superior Court, including pending appeals. The Court does not attempt to address the entire Superior Court record herein, solely summarizing those pleadings and orders relevant to the issues pending in this

January 2022, the Superior Court entered a consent order (the "Consent Order") between the

Debtor and the District regarding the rehabilitation and repair of the Property. The Debtor did not

timely comply with all the terms of the Consent Order, and in April 2023 after a multiple-day

evidentiary hearing, the Debtor was found in contempt of the Superior Court's earlier orders (the

"Contempt Order").[7] When the Debtor's contempt was not timely purged, on August 22, 2023, the

District sought the appointment of a receiver over the Property (the "Receiver Motion").[8] Shortly

thereafter, on August 31, 2023 the Debtor filed its voluntary petition under chapter 11 initiating

this case.[9]

In the Contempt Order, the Superior Court found "by clear and convincing evidence that

MP PPH failed to comply with the provision in the consent order requiring it to expeditiously and

fully fund all work called for under the consent order."[10] Specifically, as relevant in this case, the

Superior Court found that:

> [T]he evidence presented in the parties' filings and at the hearing on the
> District's renewed motion has shown clearly and convincingly that MP PPH
> repeatedly failed to comply with clear and unambiguous terms of the consent order.
> Although in a few instances MP PPH established the existence of circumstances
> beyond its control, the evidence showed that, in the great majority of cases, it was
> MP PPH's own unwillingness to comply or to invest the money necessary for full
> compliance that led to its violations of the order. Because of the magnitude and
> longstanding nature of the violations and their profoundly negative impact on the
> health and safety of the residents of the Marbury Plaza complex, the court

---

case. Nothing in this Memorandum should be interpreted as a review or other renewed analysis of the matters
determined in the Superior Court Action.

[7] Mem. Op. & Order Granting Pl.'s Renewed Mot. to Adjudicate Def. MP PPH, LLC in Civil Contempt, *District of Columbia v. MP PPH, LLC*, Case No. 2021-CA-002209-B (D.C. Super. Ct. April 26, 2023).

[8] The District of Columbia's Opposed Mot. to Appoint Receiver, *District of Columbia v. MP PPH, LLC*, Case No. 2021-CA-002209-B (D.C. Super. Ct. Aug 22, 2023).

[9] Ch. 11 Vol. Pet. Non-Individual, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Aug. 31, 2023), ECF No. 1.

[10] Contempt Order at 28, *District of Columbia v. MP PPH, LLC*, Case No. 2021-CA-002209-B (D.C. Super. Ct. April 26, 2023).

concludes, in its discretion, that MP PPH should be adjudicated in civil contempt of court.[11]

Upon the finding of civil contempt, the Superior Court continued:

> The court concludes that the best way to coerce MP PPH's compliance with the consent order and, at the same time, to compensate the victims of MP PPH's noncompliance is to order an across-the-board rent abatement for all tenants of Marbury Plaza retroactive to June 1, 2022—120 days after the court's approval of the consent order and the date by which MP PPH was to have completed all of the order's requirements. The court will order a 50% reduction in rent from June 1, 2022 to the present [April 2023], in acknowledgement of the severity of the unsafe and unsanitary conditions the residents of the complex have been forced to endure these many months. The pervasive mold, floods, leaks, and insect and rodent infestations, along with the malfunctioning plumbing and HVAC systems and the broken elevators and wheelchair lift—all of which the residents of Marbury Plaza have suffered through because of MP PPH's abject contempt for the court's order— have greatly diminished the value of the residents' tenancies. The residents thus deserve to be compensated for their losses. Even without a finding of civil contempt, it would be a miscarriage of justice for MP PPH to be allowed to retain the residents' rent in the face of its flagrant and extensive violations of the implied warranty of habitability. *See Javins v. First Nat'l Realty Corp.*, 428 F.2d 1071, 1082 (D.C. Cir. 1970) ("[T]he tenant's obligation to pay rent is dependent upon the landlord's performance of his obligations, including his warranty to maintain the premises in habitable condition.").

> The 50% rent abatement will remain in effect, indefinitely, from the date of this order, with the hope that its ongoing nature will coerce MP PPH's prompt compliance with the terms of the consent order while continuing to compensate the victims of MP PPH's contemptuous conduct. The abatement will be vacated upon the District's—or, if necessary, the court's—certification of MP PPH's full compliance with the consent order, but it will increase to 60% if MP PPH remains out of full compliance 120 days after the date of this order (August 24, 2023) and to 75% if MP PPH remains noncompliant 180 days after the date of this order (October 23, 2023).[12]

The rent abatement[13] mandated in the Contempt Order, by its own terms, was assessed

retroactively to "compensate the tenants" of MP PPH for their losses. The continuing nature of the

---

[11] Contempt Order at 28–9, *District of Columbia v. MP PPH, LLC*, Case No. 2021-CA-002209-B (D.C. Super. Ct. April 26, 2023).

[12] Contempt Order at 30–2, *District of Columbia v. MP PPH, LLC*, Case No. 2021-CA-002209-B (D.C. Super. Ct. April 26, 2023).

[13] Throughout the evidentiary hearing the parties and the Court utilized the terms "rent credits" and "rent abatement" interchangeably. For consistency, the Court shall refer to the ordered reductions as "rent abatement" as utilized in the

rent credits were then intended to "continue to compensate" the tenants with the "hope that the

ongoing nature" would also coerce MP PPH to comply with the terms of the Consent Order and

Contempt Order.[14] The rent abatements were applicable both to existing tenants of MP PPH (as of

April 2023) and all future tenants, until such time as the contempt was purged.

      c.    *The Stay Motion*

On August 31, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief

under chapter 11 of the Bankruptcy Code. Upon the filing of the debtor's petition, the stay of

§ 362(a) became automatically and immediately effective.[15] In the initial days of this case, the

Debtor sought and obtained authority to use cash collateral and approval of post-petition

financing.[16] Two weeks after the Petition Date, the District filed a motion (the "Stay Motion")

requesting the Court either confirm that the automatic stay of § 362(a) did not apply to the Superior

Court Action or grant the District relief from the automatic stay to continue the Superior Court

Action.[17] A preliminary hearing on the Stay Motion was held on October 4, 2023, after which the

Court entered a Scheduling Order establishing a discovery timeline and setting a final evidentiary

hearing on October 26, 2023.[18] On the eve of evidentiary hearing, the Debtor filed adversary

---

Contempt Order. The Debtor treated the imposed rent abatement in its books and records as a credit towards the individual tenants' accounts applied monthly.

[14] The Court does not condone the Debtor's conduct, nor the conditions of the Property leading up to the filing of this case.

[15] 11 U.S.C. § 362(a) ("a petition filed under . . . this title . . . operates as a stay, applicable to all entities . . ."); *see also* 3 Collier on Bankruptcy ¶ 362.02 (Richard Levin & Henry J. Sommer eds., 16th ed.).

[16] Order Authorizing Debtor's Interim Use of Cash Collateral & Granting Adequate Protection, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Sept. 7, 2023), ECF No. 27; Order Authorizing Debtor's Final Use of Cash Collateral & Granting Adequate Protection, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Sept. 18, 2023), ECF No. 40.

[17] Mot. of the District of Columbia to Verify Super. Ct. Lit. Re. Debtor Is Excepted from the Auto. Stay Pursuant to 11 U.S.C. § 362(B)(4) Or, in the Alt., Mot. for Relief from the Auto. Stay Re. Continuation of Prosecution of Non-bankr. Lit. in Super. Ct., *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Sept. 7, 2023), ECF No. 34.

[18] *See* Order Setting Sched. on Mot. to Determine or for Relief from Stay & Debtor's Req. for the Issuance of an Inj., *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Oct. 6, 2023), ECF No. 66.

proceeding 23-10032-ELG against the District seeking both temporary and permanent injunctive relief against enforcement of the rent credits ordered by the Contempt Order.[19]

At the hearing on October 26, 2023, the parties read into the record an agreement in principle between the Debtor, the DIP Lender, and the District resolving the Stay Motion. A consent order memorializing the agreement was entered on November 7, 2023 (the "Stay Order"). The Stay Order did not include any determination or legal finding as to the applicability of the automatic stay, instead, as relevant herein, it included: (1) the consent of the Debtor to the limited appointment of a receiver in the Superior Court Action; (2) the Debtor's agreement to fund an account of any appointed receiver for payments towards abatement of conditions at the Property; and (3) agreement to request the Superior Court to order that the rent abatement required by the Contempt Order would expire on December 1, 2023. The Stay Order further provided that if the abatement was not terminated, then the Debtor retained all rights to seek further relief in either this Court or the Superior Court.[20] As a result of entry of the Stay Order, the adversary proceeding was stayed consensually.[21]

Subsequent to the entry of the Stay Order, the District and the Debtor presented their agreement to the Superior Court; however, the requested relief was not approved by the Superior Court. As a result, on November 20, 2023, the Debtor filed its *Motion to Address Procedures for Tenant Claims Issues and to Clarify the Order Resolving the Automatic Stay Motion* (the

---

[19] Debtor's Compl. for Inj. Relief, *MP PPH LLC v. District of Columbia (In re MP PPH LLC)*, Case No. 23-00246-ELG, Adv. Proc. No. 23-10032 (Bankr. D.D.C. Oct. 25, 2023), ECF No. 1.

[20] Consent Order Resolving Auto. Stay Mot., *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Nov. 7, 2023), ECF No. 99.

[21] Order Staying Adv. Pro., *MP PPH LLC v. District of Columbia (In re MP PPH LLC)*, Case No. 23-00246-ELG, Adv. Proc. No. 23-10032 (Bankr. D.D.C. Nov. 6, 2023), ECF No. 7.

"Clarification Motion").[22] The Clarification Motion once again raised the question of the impact

of the automatic stay on the continued enforcement of the rent abatement, or in the alternative,

consistent with the terms of the Stay Order, sought the imposition of an injunction prohibiting

continuation of the rent abatement as of December 1, 2023. In addition, on November 20, 2023,

the Debtor filed a motion to lift the stay of the adversary proceeding and to reset a hearing on the

Motion for a Preliminary Injunction.[23] Both the Clarification and Injunction Motions were filed on

an expedited basis, and set for hearing on November 28, 2023.[24]

At this first hearing, the Court established that it had not previously ruled on either the

issue of the extent and application of the automatic stay or whether or not to issue an injunction,[25]

noted the unity of interest between the Injunction Motion and part of the relief sought in the

Clarification Motion,[26] and continued both matters for an evidentiary hearing beginning the

following week.[27] Ultimately, the evidentiary hearing was conducted over a three-day period on

---

[22] *See* Debtor's Mot. to Address Procedures for Tenant Claims Issues & Clarify the Order Resolving the Auto. Stay Mot., *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Nov. 20, 2023), ECF No. 109.

[23] Pl.'s Mot. to Lift Stay of Adv. Pro. & Sched. Mot. for a Prelim. Inj. for an Expedited Hr'g, *MP PPH LLC v. District of Columbia (In re MP PPH LLC)*, Case No. 23-00246-ELG, Adv. Proc. No. 23-10032 (Bankr. D.D.C. Nov. 20, 2023), ECF No. 9.

[24] Mot. to Expedite Hr'g on Debtor's Mot. to Address Procedures for Tenant Claims Issues & to Clarify the Order Resolving the Auto. Stay Mot., *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Nov. 20, 2023), ECF No. 110; Order Granting Mot. to Expedite Hr'g on Debtor's Mot. to Address Procedures for Tenant Claims Issues & to Clarify the Order Resolving the Auto. Stay Mot., *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Nov. 21, 2023), ECF No. 112; Mot. to Expedite Hr'g on Pl.'s Mot. to Lift Stay of Adv. Pro. & Sched. Debtor's Mot. for a Prelim. Inj. for an Expedited Hr'g, *MP PPH LLC v. District of Columbia (In re MP PPH LLC)*, Case No. 23-00246-ELG, Adv. Proc. No. 23-10032 (Bankr. D.D.C. Nov. 20, 2023), ECF No. 10; Order Granting Mot. to Lift Stay of Adv. Pro. & to Schedule Debtor's Mot. for a Prelim. Inj. for an Expedited Hr'g, *MP PPH LLC v. District of Columbia (In re MP PPH LLC)*, Case No. 23-00246-ELG, Adv. Proc. No. 23-10032 (Bankr. D.D.C. Nov. 21, 2023), ECF No. 12.

[25] Tr. Hr'g Nov. 28, 2023 15:21–16:13, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Nov. 29, 2023), ECF No. 128.

[26] *Id.* at 54:11–55:2.

[27] *Id.* at 63:2–6.

December 5, 6, and 8, 2023.[28] The Court adjourned the Hearing to December 11, 2023 at which time it issued its oral ruling memorialized herein.

In between entry of the Stay Order and the Hearing on the Clarification Motion, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee"). The Committee was initially appointed on October 26, 2023, withdrawn on November 6, 2023, and reappointed on November 9, 2023.[29] On November 14, 2023, proposed counsel for the Committee filed a notice of appearance in the Debtor's case.[30] As a result, the Committee was an active participant in the Hearing held on the Clarification and Injunction Motions. In addition, on November 28, 2023, the Legal Aid Society of the District of Columbia ("Legal Aid") noted an appearance[31] in this case on behalf of four of the Debtor's tenants (one of whom also was appointed to the Committee), and also played an active role at the Hearing.

      *d.*    *Clarification Motion: Positions of the Parties*

By the Clarification Motion, the Debtor moved the Court (in a less than clear fashion) to rule on whether the automatic stay enjoins the continued enforcement of the Superior Court ordered rent abatement. Alternatively, if the automatic stay does not apply, the Debtor sought entry of a stay or injunction against the continued enforcement of the rent abatement after December 1,

---

[28] *See* Tr. Hr'g Nov. 28, 2023, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Nov. 29, 2023), ECF No. 128; Tr. Hr'g Dec. 5, 2023, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Dec. 12, 2023), ECF No. 164; Tr. Hr'g Dec. 6, 2023, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Dec. 11, 2023), ECF No. 161; Tr. Hr'g Dec. 8, 2023, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Dec. 14, 2023), ECF No. 170; Tr. Hr'g Dec. 11, 2023, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Dec. 12, 2023), ECF No. 166.

[29] Appointment of Unsecured Creditors' Comm., *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Oct. 26, 2023), ECF No. 92; Notice of Withdrawal of Appointment of Unsecured Creditors' Comm., *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Nov. 6, 2023), ECF No. 96; Appointment of Unsecured Creditors' Comm., *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Nov. 9, 2023), ECF No. 102.

[30] Pillsbury's Notice of Appearance & Req. for Notice, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Nov. 14, 2023), ECF No. 104.

[31] Notice of Appearance and Req. for Service of Notices & Papers, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Nov. 28, 2023), ECF Nos. 122, 123.

2023. In either event, the relief requested was that the rent abatement terminate as of December 1, 2023. At the Hearing, the Debtor presented three alternative bases for relief: (1) a finding that the rent abatement portion of the Contempt Order is not exempt from the stay under the police and regulatory exception to the automatic stay of § 362(b)(4); (2) a finding that even if the rent abatements are exempt from the automatic stay under § 362(b)(4), the imposition of an injunction similar to the automatic stay pursuant to § 105; or, alternatively, (3) even if the rent abatements are exempt from the automatic stay, the Debtor is entitled to a preliminary injunction as to their continued enforcement as requested in the adversary proceeding under the standard for a preliminary injunction.

The District was the only party to file a written opposition the Clarification Motion. The District restated its arguments put forward in its opposition to the Stay Motion, including the applicability of the police and regulatory exception of the automatic stay to the Superior Court Action encompassing both the litigation and the terms of the Contempt Order, the *Rooker-Feldman* doctrine, and the doctrine of *Younger* abstention.[32] Legal Aid adopted the arguments in the District's brief, and at the Hearing expanded upon the question of abstention. At the Hearing, the Committee primarily focused its arguments on two fronts: (i) whether the rent collected by the Debtor was property of the estate under § 541; and (ii) if the rents were not property of the estate, then there was not a stay violation under § 362(k). However, there is no § 362(k) claim for violation of the automatic stay presently before the Court. The Court is only considering (a) whether the rent abatements are subject to or are excepted from the automatic stay of § 362(a); or, alternatively, (b) whether the Debtor has met its burden for the imposition of an injunction under § 105 or under the

---

[32] Opp'n, *In re MP PPH LLC* (Bankr. D.D.C. Nov. 28, 2023), ECF No. 124; Suppl. Opp'n, *In re MP PPH LLC* (Bankr. D.D.C. Dec. 5, 2023), ECF No. 148.

more traditional preliminary injunction standard notwithstanding the applicability of the police and regulatory exception under § 362(b)(4).

### III.    Discussion

The matter before the Court concerns the extent to which the § 362(b)(4) police and regulatory exception to the automatic stay applies to the Contempt Order in the Superior Court Action. Importantly, neither the Clarification Motion nor the Injunction Motion require the Court to: (i) overturn or reinterpret the Contempt Order; (ii) vacate the Consent Order; or (iii) otherwise limit any applicable state court remedies for the tenants or rights of enforcement of the District of Columbia. Furthermore, there is no question or challenge as to whether the underlying Superior Court Action itself is within the police and regulatory exception to the automatic stay. By the express terms of the Consent Order, the Debtor and the District have excluded from the current issues before the Court the impact of the Debtor's petition (and the applicability of the automatic stay) on the District's request to appoint a state court receiver.[33] Moreover, upon request of the parties, the Court does not address, and specifically reserves, a determination as to the legal impact of rent abatements for the period between the Petition Date and December 1, 2023.

Thus, the questions before the Court in the Clarification Motion are: 1) whether the continuation of the rent abatement established by the Contempt Order after December 1, 2023 falls within the police and regulatory exception to the automatic stay of § 362(b)(4); and 2) if the automatic stay does not apply, whether the Court should nevertheless impose a stay as to the continued application of the rent abatement under § 105. Alternatively, and only if the Court does not rule for the Debtor on the Clarification Motion, the Injunction Motion seeks entry of a

---

[33] Similar to the question of the applicability of the automatic stay discussed herein, in the Consent Order the Court did not issue a *ruling* on the question of the applicability of the automatic stay or any other provision of the Bankruptcy Code on the sought appointment of a state court receiver after the filing of the Petition. By entering the Consent Order, the Court approved the agreed resolution between the parties based upon each party's independent business judgment.

preliminary injunction against the continued application of the rent abatement. Because the Court

finds for the Debtor on the Clarification Motion, it does not reach the Motion for a Preliminary

Injunction.

      *a)     Preliminary Challenges*

Before addressing the merits as to applicability of the automatic stay, the Court will address

the various jurisdictional and other threshold arguments raised by the parties in both their pleadings

and at the Hearing.

      *i)     The Court has Jurisdiction Over the Clarification Motion*

The District and Legal Aid argue that this Court either lacks jurisdiction or should abstain

from determining if the automatic stay is applicable to bar the continued enforcement of the rent

abatement terms of the Contempt Order. The principal challenge is that the Court lacks jurisdiction

under the *Rooker-Feldman* doctrine to consider the matter. In this Circuit,

> *Rooker-Feldman's* jurisdictional bar protects the Supreme Court's certiorari
> jurisdiction under Section 1257 of Title 28 of the United States Code. It ensures
> that the United States Supreme Court is the only federal court to hear appeals from
> judgments rendered by the highest court of a state (or, as here, the District of
> Columbia). Operationally, the *Rooker-Feldman* doctrine "is confined to cases of
> the kind from which the doctrine acquired its name: cases brought by [i] state-court
> losers [ii] complaining of injuries caused by state-court judgments rendered before
> the [federal] district court proceedings commenced and [iii] inviting district court
> review and rejection of those judgments." The Supreme Court has repeatedly
> emphasized that the doctrine is "narrow," applicable to bar only complaints that
> meet those listed conditions.[34]

The jurisdictional bar of the Doctrine applies only to final state court judgments, not interlocutory

orders.[35] As a civil contempt order in a pending proceeding, the Contempt Order is an interlocutory

---

[34] *Croley v. Joint Comm. on Judicial Admin.*, 895 F.3d 22, 28 (D.C. Cir. 2018) (internal citations omitted).

[35] *See William Penn Apts. v. D.C. Court of Appeals*, 39 F. Supp. 3d 11, 17 (D.D.C. 2014) ("Since *Exxon Mobil*, courts
have interpreted *Exxon Mobil* to have abrogated *Richardson's* holding in that the post-*Exxon Mobil Rooker-Feldman*
doctrine applies only to final decisions after the state proceedings ended and does not apply to appeals of interlocutory
orders. . . . '[S]tate proceedings have ended' for the purposes of the *Rooker-Feldman* doctrine: First, when the highest
state court in which review is available has affirmed the judgment below and nothing is left to be resolved[.] . . .

order, making the *Rooker-Feldman* doctrine inapplicable to the question of whether this Court has jurisdiction over the Clarification Motion.[36]

The Clarification Motion does not require the Court to consider the bona fides of the Contempt Order. The question before this Court is whether the ongoing enforcement of the judgment portion of the order (the rent abatement) is subject to an exception of the automatic stay. As a result, the issue herein does not require the Court evaluate whether the Superior Court reached the correct result under state law.[37] There may be overlapping legal issues between the determination of the scope of the police and regulatory exception to the automatic stay and the Superior Court Action, but that does not mean that this Court is required to reject or review the analysis or findings of the Superior Court in the Contempt Order.[38] The inquiry herein does not implicate the *Rooker-Feldman* doctrine.

Alternatively, the District and Legal Aid assert that this Court should abstain from exercising jurisdiction under the *Younger* doctrine. Originating from the 1971 Supreme Court case *Younger v. Harris*, the doctrine is grounded in the principles of comity and federalism, and stands for the proposition that federal courts generally should refrain from enjoining or otherwise interfering in ongoing state court proceedings.[39] The Doctrine applies when a federal court is asked

---

Second, if the state action has reached a point where neither party seeks further action[.] . . . Third, if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated[.]) (internal citations omitted).

[36] *See SEIU Local 32BJ v. Preeminent Protective Servs.*, 997 F.3d 1217, 1221 (D.C. Cir. 2021). ("[A] civil contempt order against a party in a pending proceeding is not appealable as a final order under 28 U.S.C. § 1291." *Byrd v. Reno*, 180 F.3d 298, 302 (D.C. Cir. 1999)).

[37] *See Phila. Entm't & Dev. Partners, LP v. Dep't of Revenue (In re Phila. Entm't & Dev. Partners, LP)*, 879 F.3d 492, 501 (3rd Cir. 2018).

[38] *See id.*

[39] *Younger v. Harris*, 401 U.S. 37, 44–45 (1971); *see also Mender v. Sosa (In re LR Builders, Inc.)*, No. PR 07-016, 2007 Bankr. LEXIS 4270, at *20 (B.A.P. 1st Cir. Oct. 31, 2007) ("*Younger* stands for the proposition that federal courts should abstain from hearing challenges to the constitutionality of state criminal statutes when the challenger is being prosecuted in a state court for violating the statute.").

to stay enforcement of a state court judgment in lieu of the movant following applicable state law appellate procedures. That is not the situation in this case. The Clarification Motion does not request that the Court enjoin either the Contempt Order or the Superior Court Action. Instead, the question is whether the continued immediate enforcement of the rent abatement is stayed by § 362.

The question of the uneasy intersection of the *Younger* doctrine and the automatic stay was considered in depth by the United States Bankruptcy Court for the Southern District of New York in the case of *Go West Entertainment*.[40] In that case, the bankruptcy court held "[t]here is no authority that the principle of *Younger* abstention is implicated by the application of the automatic stay where a debtor has filed under chapter 11 for the express purpose of obtaining a stay and filing an appeal after an adverse determination in State court."[41] This Court agrees. In this case, the Court is asked to interpret a core provision of the Bankruptcy Code—the applicability of, and possible exceptions to, the automatic stay. The Court is not asked to determine the merits of the Debtor's pending appeal of the Superior Court Action. The Court has jurisdiction over the Clarification Motion, and there is no basis for abstention under the *Younger* doctrine.

<em>ii)    The Debtor's Rents are Property of the Debtor's Estate</em>

The question of whether the apartment rents collected by the Debtor are property of the estate (and thus subject to § 362) was raised by the Committee. There is no doubt or dispute that the Property, which is owned by the Debtor, is property of the bankruptcy estate under § 541(a)(1). There is also no doubt or dispute that the rents at issue come directly "of or from" the Property.

---

[40] *Go West Entm't v. N.Y. State Liquor Auth. (In re Go West Entm't)*, 387 B.R. 435 (Bankr. S.D.N.Y. 2008).

[41] *Id.* at 444; *see also In re LR Builders, Inc.*, No. PR 07-016, 2007 Bankr. LEXIS 4270, at *21 ("Moreover, the Appellants fail to recognize and discuss the implications of the Bankruptcy Clause of the Constitution, U.S. Const. art. I, § 8, cl. 4, the Supremacy Clause, U.S. Const. art. VI, cl. 2, or the automatic stay, 11 U.S.C. § 362, which stayed their prosecution of their counterclaim in the Ponce Superior Court.").

Thus, under the unambiguous language of § 541(a)(6), the rents collected are of or from property of the estate and are themselves property of the estate.[42]

The rents in this case are assigned to the DIP Lender (the "Assignment") as collateral for the loan on the Property.[43] The characterization of the rents as property of the estate under § 541 includes rents subject to a lien, provided that the debtor did not lose its prepetition title to the rents.[44] The effect of the Assignment on the Debtor's interest in the rents is governed by applicable state law—in this case New York law.[45] Under New York law, an absolute assignment of rents is rarely recognized, and a creditor's right to collect rents does not divest a debtor of all of its interests in the rents.[46] Therefore, even though the Debtor's rents are assigned to the DIP Lender, they remain property of the estate, and are subject to the provisions of the Bankruptcy Code that govern the treatment of rents and the treatment of property of the estate.

### b)      Scope and Extent of the Automatic Stay and its Exceptions

Having dispensed with each of the jurisdictional and other threshold arguments, the Court now turns to the question of the applicability of the automatic stay and the police and regulatory exception to the ongoing rent abatements.

### i)      Police and Regulatory Power Exception

The filing of a chapter 11 petition "operates as a stay, applicable to all entities," of certain actions that could otherwise be undertaken against the debtor, including "any act to obtain

---

[42] *In re Amaravathi Ltd. P'ship*, 416 B.R. 618, 623–24 (Bankr. S.D. Tex. 2009).

[43] Emergency Mot. for Interim & Final Orders Authorizing Use of Cash Collateral & Granting Adequate Prot. at 12, *In re MP PPH LLC*, Case No. 23-00246 (Bankr. D.D.C. Aug. 31, 2023), ECF No. 3–3.

[44] *Kirk v. Texaco (In re Texaco, Inc.)*, 82 B.R. 6789, 679–80 (S.D.N.Y. 1988).

[45] Emergency Mot. for Interim & Final Orders Authorizing Use of Cash Collateral & Granting Adequate Prot. at 18, *In re MP PPH LLC*, Case No. 23-00246 (Bankr. D.D.C. Aug. 31, 2023), ECF No. 3–3.

[46] *See In re S. Side House, LLC*, 474 B.R. 391, 403–05 (Bankr. E.D.N.Y. 2012) ("Under New York law, the right to enforce an assignment or collect the rents does not confer title.").

possession of property of the estate or of property from the estate or to exercise control over property of the estate."[47] The stay is not unlimited and is subject to the exceptions enumerated in § 362(b). As stated *supra*, the exemption in question in this case is § 362(b)(4), which states that the filing of a petition "does not operate as a stay . . . of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power" generally referred to as the "police and regulatory exception."[48] The Debtor does not challenge, and the Court agrees, that the underlying causes of action that comprise the Superior Court Action (violations of the Tenant Receivership Act, D.C. Code §§ 42-3651.01–3651.08 (the "TRA"), and the Consumer Protection Procedures Act, D.C. Code §§ 28-3901–3913 (the "CPPA")), squarely fall within the scope of the police and regulatory exception. Through this exception, the Superior Court Action is not stayed, and the Superior Court retains the authority to continue to conduct proceedings and issue orders on the TRA and CPPA causes of action.

The right of state courts to enter orders through the police and regulatory exception to the automatic stay is also not without limits. Upon the filing of a bankruptcy petition, a debtor's assets fall under the control of the bankruptcy court and constitute a fund that all creditors are entitled to share. Allowing a post-petition enforcement pursuant to the police and regulatory exception of a money judgment would give the governmental unit preferential treatment over other creditors.[49] Thus, "anything beyond the mere entry of a money judgment against a debtor is prohibited by the automatic stay."[50] Stated otherwise, the police and regulatory "extends to permit an injunction and

---

[47] 11 U.S.C. § 362(a).

[48] 11 U.S.C. § 362(b)(4).

[49] *NLRB v. Sawulski, 158 B.R. 971, 978 (E.D. Mich. 1993)* (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6299).

[50] *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000).

enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment."[51] Accordingly, post-petition "seizure of a [debtor's] property to satisfy the judgment obtained by a plaintiff-creditor" does not fall within the police and regulatory exception.[52] If the government wishes to pursue collection of a money judgment, including a judgment issued post-petition pursuant to the police and regulatory exception, it must first obtain relief from the automatic stay.[53]

If the Superior Court had issued a fine against the Debtor, it would clearly be a pecuniary order establishing a liquidated money judgment. However, instead of a fine, the Superior Court chose to impose the rent abatements with the hope that "ongoing nature will coerce MP PPH's prompt compliance with the terms of the consent order while continuing to compensate the victims of MP PPH's contemptuous conduct."[54] However, on a practical level, the abatement is a pecuniary fine payable not to the government of the District of Columbia, but to be immediately enforced and collected from MP PPH each month and credited to the tenants.[55] The fact that the Contempt Order is self-effectuating is a red herring; the Contempt Order is a continuing exercise of control over property of the bankruptcy estate to satisfy a judgment in the Contempt Order. The immediate

---

[51] S. Rep. No. 989, 95th Cong., 2d Sess. 52 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5838; H.R. Rep. No. 595, 95 Cong., 1st Sess. 343 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6299.

[52] *Sawulski*, 158 B.R. at 978 (citing *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 943 (6th Cir. 1986)); *Penn Terra Ltd. v. Dep't of Env't Res.*, 733 F.2d 267, 275 (3d Cir. 1984).

[53] *See NLRB v. 15th Ave. Iron Works, Inc.*, 964 F.2d 1336, 1337 (2d Cir. 1992).

[54] Mem. Op. & Order Granting Pl.'s Renewed Mot. to Adjudicate Def. MP PPH, LLC in Civil Contempt at 32, *District of Columbia v. MP PPH, LLC*, Case No. 2021-CA-002209-B (D.C. Super. Ct. April 26, 2023).

[55] As discussed above, the Contempt Order directed the Debtor to abate (reduce) the rent it was charging its tenants by a set percentage. The abatement was effectuated by the addition of a rent credit to each tenant on a monthly basis equal to the applicable percentage. In some cases, as a result of the retroactive abatements in April 2023, tenants maintained an ongoing credit balance eliminating the requirement to make any ongoing payment (i.e., their accumulated credits were greater than the portion of the rent due each month). The credits were treated as an ongoing payment of the applicable portion of the rent by the applicable tenant.

enforcement of the rent abatement is the post-petition enforcement of a money judgment that violates the automatic stay and is not excepted from the stay under § 362(b)(4).

The Court's exercise of its jurisdiction over property of the estate need not frustrate the District's underlying actions. This Court does not propose to step into the shoes or second-guess the Superior Court's determinations as to the current health and safety status of the Property. By enjoining the ongoing effect of the rent abatement, this Court merely acts to ensure that the Debtor does not lose property of the estate with value to all creditors, the protection of which is essential to the reorganization process in chapter 11. The Court does not step upon either the Superior Court's adjudicatory functions or its ultimate authority to determine if the Debtor has satisfied the District's housing and consumer protection laws.

### c)   Contempt Proceedings and the Automatic Stay

The District and Legal Aid argue that notwithstanding the immediate collection nature of the rent abatements because such obligations arise from a contempt order they are nevertheless excepted from the automatic stay, even if not under the police and regulatory exception. In general, contempt orders that uphold the dignity of the issuing court (generally referred to as criminal contempt orders) are excepted from the automatic stay.[56] Whereas contempt orders used to compel future compliance or to compensate a party for losses sustained (generally referred to as civil contempt orders) are subject to the automatic stay absent another exception.[57] While a court can

---

[56] *Sawulski*, 158 B.R. at 975.

[57] *See Ampersand Publ'g, LLC v. NLRB*, No. 1:21-mc-0140 (GMH), 2023 WL 6879887, at *7, 2023 U.S. Dist. LEXIS 186906, at *25–6 (D.D.C. Oct. 18, 2023) (citing *Cobell v. Norton*, 334 F.3d 1128, 1145 (D.C. Cir. 2003)); *see, e.g.*, *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391 (6th Cir. 1991) ("[T]he purpose of civil contempt is to coerce an individual to perform an act or to compensate an injured complainant. Whereas, the purpose of criminal contempt is punitive—'to vindicate the authority of the court.'" (internal citations omitted) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)); *In re Just Brakes Corp. Sys., Inc.*, 108 F.3d 881, 885 (8th Cir. 1997) ("[T]he judicial power to punish for criminal contempt of a court order is carefully distinguished from the power to remedy a violation of that order through civil contempt.").

look beyond a label applied to a contempt proceeding, if the contempt proceeding is intended to coerce compliance and compensate for losses, it is for a civil purpose.[58] In other words, if the contempt could be purged at any time, a contempt proceeding is civil in nature and subject to the automatic stay.[59] The Contempt Order clearly states that its goals and purpose are to coerce prompt compliance while compensating the tenants and is a civil contempt order subject to the automatic stay.[60]

  d)  *Extension of the Automatic Stay Pursuant to § 105*

  Notwithstanding the finding that the rent abatement in the Contempt Order is not exempt from the automatic stay, the Court alternatively finds that the evidence would support the issuance of an injunction similar to the § 362(a) automatic stay under § 105 to terminate the ongoing enforcement of the rent abatements. Although § 105(a) does not give a bankruptcy court a blank check from which to "create substantive rights that are otherwise unavailable under applicable law" or act as "a roving commission to do equity," the section does permit the bankruptcy court to take actions necessary to "protect the integrity of the bankrupt's estate" and enjoin actions that "might impede the reorganization process."[61] This includes, in exceptional circumstances, issuing an injunction effectively extending the stay under § 362 to enjoin actions that are otherwise excepted from the automatic stay.[62]

---

[58] *Ampersand*, 2023 WL 6879887 at *8.

[59] *See, e.g.*, *In re Wohleber*, 596 B.R. 554, 570 (B.A.P. 6th Cir. 2019) (citing *Rook v. Rook (In re Rook)*, 102 B.R. 490, 494 (Bankr. E.D. Va. 1989)).

[60] *See* Debtor Ex. C at 30, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Dec. 4, 2023), ECF No. 140–3 ("The court concludes that the best way to coerce MP PPH's compliance with the consent order and, at the same time, to compensate the victims of MP PPH's noncompliance is to order an across-the-board rent abatement for all tenants of Marbury Plaza retroactive to June 1, 2022.").

[61] *FiberTower Network Servs. Corp. v. FCC (In re FiberTower Network Servs. Corp.)*, 482 B.R. 169, 182 (Bankr. N.D. Tex. 2012) (quoting *Bear v. Coben (In re Golden Plan of Cal., Inc.)*, 829 F. 2d 705, 713 (9th Cir. 1986)).

[62] *Id.*; *see, e.g.*, *Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 523 (5th Cir. 2004) (quoting *In re Cajun Elec. Power*, 185 F.3d 446, 457 n.18 (5th Cir. 1999)); *Commonwealth Oil Ref. Co. v. EPA (In re Commonwealth Oil Ref. Co.)*, 805 F.2d 1175, 1188 n.16 (5th Cir. 1986) (listing cases from numerous jurisdictions).

In a bankruptcy case, a movant seeking an injunction under § 105(a) must establish: (a) likelihood of a successful reorganization (also stated as likely to prevail on the merits); (b) likelihood of irreparable harm to the debtor's estate (also stated irreparable injury); (c) the balance of equities or equities between the debtor and its creditors favors the movant; and (d) an injunction is in the public interest (serves the public interest).[63] Each prong must be satisfied and the movant has the burden to show each factor weighs in favor of the injunction.[64] Even if the automatic stay did not apply to the immediate enforcement of the rent abatement, the Court finds that the Debtor met its burden as to each of the requirements for the issuance of an injunction against the continued immediate enforcement of the rent abatement.

i.     *The Debtor has a Realistic Likelihood of a Successful Reorganization*

Assessing the likelihood of success on the merits "does not involve a final determination of the merits, but rather the exercise of sound judicial discretion on the need for interim relief."[65] The likelihood of success refers to if the Debtor is likely to succeed in this case in terms of a successful reorganization, "not that the Debtor is likely to overturn" the Contempt Order.[66] With the testimony of the Debtor's witnesses, it is clear to the Court that there is reasonable opportunity for the Debtor to succeed in this case. The Debtor's reorganization in this case centers around the sale of the Property to pay its creditors, potentially in full.[67] The Debtor is motivated to sell the

---

[63] *Aamer v. Obama*, 953 F. Supp. 2d 213, 217 (D.D.C. 2013) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)); *see also Bestwall LLC v. Those Parties Listed on Appendix A (In re Bestwall LLC)*, 606 B.R. 243, 253 (Bankr. W.D.N.C.), *affirmed Bestwall LLC Official Comm. of Asbestos Claimants (In re Bestwall LLC)*, 271 F.4th 168 (4th Cir. 2023).

[64] *See Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).

[65] *Nat'l Org. for Women, Wash. D.C. Chapter v. Soc. Sec. Admin. of the Dep't of Health & Human Servs.*, 736 F.2d 727, 733 (D.C. Cir. 1984).

[66] *Bestwall LLC*, 606 B.R. at 254; *FiberTower*, 482 B.R. at 183 (citing *Go West*, 387 B.R. at 440); *accord Wilner Wood Prods. Co. v. Maine Dep't of Env. Prot.*, 128 B.R. 1, 4 n.4 (D. Me. 1991)).

[67] Section 1129(a)(11) specifically contemplate that a liquidating plan can be a successful result of a chapter 11 case if the liquidation is proposed in the plan.

Property and at all times during this case has worked diligently towards that outcome—including employing a property management company experienced in distressed properties, capital improvements, and overseeing ongoing repairs and maintenance obligations. The Debtor concedes that the rehabilitation work is not complete, and that there remain tenant complaints and other ongoing issues with the conditions of the Property. The Court finds that without the termination of the ongoing enforcement of the rent abatement, there is no evidence that the Debtor is unwilling or otherwise unable to sell the Property. Thus, this factor clearly weighs in favor of the Debtor.

> ii.    *Failure to Enjoin Continuation of the Rent Credits Would Irreparably Harm the Debtor*

There are three main principles that apply when determining whether an alleged harm is irreparable: (i) "the injury must be both certain and great; it must be actual and not theoretical;" (ii) the movant must "substantiate the claim that irreparable injury is 'likely' to occur"; and (iii) the moving party must establish causation.[68] Furthermore, "[r]ecoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business."[69] This case was filed to provide the Debtor the opportunity to rehabilitate and sell the Property in order to pay its creditors.

The Debtor has established that the continuing enforcement of the rent abatement would cause an irreparable harm to the bankruptcy estate. The Property has a potential fully occupied monthly rental revenue of $800,000 without the rent abatement.[70] With the rent abatement in place,

---

[68] *Dallas Safari Club v. Bernhardt*, 453 F. Supp. 3d 391, 398–99 (D.D.C. 2020) (citing *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

[69] *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (citing *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n.2 (D.C. Cir. 1977)).

[70] Tr. Hr'g Dec. 5, 2023 at 118:11–13, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Dec. 12, 2023), ECF No. 164.

the Debtor has a potential monthly rent recovery of approximately $330,000.[71] The Debtor has minimum expenses of $600,000 per month just to operate the Property without any improvements, repairs, or scheduled maintenance, and is operating at a distinct deficit.[72] Furthermore, the Court finds the testimony of the Debtor's expert credible that no potential buyer would complete a purchase of the Property with the rent abatement in place and that the existence of such credits might further restrict a potential purchaser's ability to acquire sufficient funding to close a purchase.

The collection of rent and use of the same towards the operation of an apartment complex is the very existence and core of the Debtor's business. In this case, while there is post-petition financing in place, the budget itself anticipated additional rental income for December.[73] The combination of the inability to fund post-petition operating expenses and significant impacts on a potential sale establishes that the ongoing enforcement of the rent abatement is a direct threat to the Debtor's reorganization and this factor weighs in favor of an injunction.[74]

iii.      *Balance of the Equities Supports the Debtor*

The Court must balance the potential harm to the Debtor's estate with the potential impact of issuance of an injunction on the District and the Debtor's tenants. The Debtor filed this case to rehabilitate and market the Property, and the Court is satisfied that the Debtor filed this case for the legitimate purpose of addressing its debt. The continued immediate enforcement of the rent

---

[71] Tr. Hr'g Dec. 5, 2023 at 144:15–19, 118:14–16.

[72] Tr. Hr'g Dec. 5, 2023 at 144:5–8.

[73] Order Authorizing Debtor's Interim Use of Cash Collateral & Granting Adequate Protection, *In re MP PPH LLC*, Case No. 23-00246-ELG (Sept. 7, 2023), ECF No. 27; Order Authorizing Debtor's Final Use of Cash Collateral & Granting Adequate Protection, *In re MP PPH LLC*, Case No. 23-00246-ELG (Sept. 18, 2023), ECF No. 40.

[74] *See In re Northbelt, LLC*, 630 B.R. 228, 280-82 (Bankr. S.D. Tex. 2020) (discussing income stream from SARE properties in connection with plan feasibility); *In re Brandywine Townhouses, Inc.*, 524 B.R. 889, 893-94 (Bankr. N.D. Ga. 2014) (same).

abatement significantly hinders the Debtor's inability to operate, including its ability to complete essential and emergency repairs to the Property or to work otherwise to purge its contempt under the Contempt Order. The tenants are living in an apartment complex that is somewhere between the condition present in April 2023 and a fully "purged" status. The evidence is, at best, conflicting on the current state of the Debtor's progress towards purging its contempt. The Court was presented with a significant amount of evidence on the past and present condition of the Property,[75] but the ultimate determination on the purging of the Contempt Order is not one for this Court.

The tenants immediately and directly benefit from the rent abatement. But an injunction of the immediate enforcement of the rent abatement does not eliminate the Superior Court's order to provide the tenants with rent abatement, it simply delays the collection of such abated amounts. Furthermore, the rent abatement in the Contempt Order is not the sole recovery mechanism for the benefit of or on behalf of the tenants,[76] and the tenants otherwise retain all of their individual state court rights and rights to file claims in this case.[77] Furthermore, the District is not prevented from seeking a determination or liquidation of damages against the Debtor in the Superior Court Action. The entire purpose of this case is greatly hampered by the ongoing enforcement of the abatement

---

[75] *See* Exs. 1–44, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Oct. 25, 2023), ECF Nos. 89–1 to – 34; Exs. D, E, *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Oct. 25, 2023), ECF No. 87–4 to –5.

[76] The Superior Court Action was not brought by the tenants, but they are direct beneficiaries of the proceeding. The tenants' ability to exercise their rights under applicable District of Columbia law has not been challenged by the Debtor at any time.

[77] In the Motion to Clarify, the Debtor indicated that counsel that participated in this Court during the Hearing had indicated an intent to intervene in the Superior Court Action. *See* Debtor's Mot. to Address Procedures for Tenant Claims Issues & Clarify the Order Resolving the Auto. Stay Mot., *In re MP PPH LLC*, Case No. 23-00246-ELG (Bankr. D.D.C. Nov. 20, 2023), ECF No. 109. It does not appear that such motion was filed. However, even if intervention was granted, any actions taken by the tenants in such action without relief from the automatic stay would be a violation of the stay as the tenant's actions in that matter are not covered by the police and regulatory exception to the automatic stay provided to the District. *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, ____, 143 S. Ct. 1689, 1696 (2023) (examining the definition of "governmental unit"); *In re 1736 18th St, N.W., Ltd. P'hip*, 97 B.R. 121, 123 (Bankr. D.D.C. 1989) (discussing the exception found in § 362(b)(4) as being inapplicable to cases brought by tenants); *In re Laskaratos*, 605 B.R. 282, 306 (Bankr. E.D.N.Y. 2019) (noting that for an individual to subsume the rights of a governmental actor, there would be required an indication that the individual was so directed).

while the District and tenants retain all their legal rights (including the accumulation of ongoing

credits), thus the balance of the equities clearly weighs in favor of the Debtor.

iv.       *The Public Interest Supports an Injunction*

Courts have previously held that injunctions that can assist in the facilitation of a

reorganization serve the public interest.[78] As established by the Debtor, its ability to successfully

reorganize by selling the Property is impaired by the enforcement of the rent abatement.

Furthermore, the impact on the District's ability to continue to pursue their police and regulatory

power would be marginal, as the relief requested in enjoining the immediate enforcement of the

rent abatement is limited in scope. The relief sought by the Debtor would simply prohibit the

District from enforcing such amounts outside of the bankruptcy process. The requested injunction

does not allow the Debtor to escape any alleged liability, it merely defers when such amounts are

collected from the Debtor. Thus, the Court finds the public interest in preserving a bankruptcy

estate and promoting the reorganization of businesses outweighs the public interest in the

immediate enforcement of the rent abatement.

*e)*      *Preliminary Injunction*

The Hearing also included the Debtor's Motion for Preliminary Injunction in the adversary

proceeding. However, because of the finding that the rent abatement is not included in the police

and regulatory exception or, in the alternative, that the issuance of an injunction under § 105(a) is

proper, the Motion for Preliminary Injunction is moot, and the Court need not and does not address

it herein.

---

[78] *See, e.g., SAS Overseas Consultants v. Benoit*, No. Civ. A. 99-1663, 2000 U.S. Dist. LEXIS 1208, 2000 WL 140611, at *5 (E.D. La. Feb. 7, 2000); *Venzke Steel Corp. v. LLA, Inc. (In re Venzke Steel Corp.)*, 142 B.R. 183, 185 (Bankr. N.D. Ohio 1992); *Lazarus Burman Assocs. v. Nat'l Westminster Bank U.S.A. (In re Lazarus Burman Assocs.)*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993).

24

## IV.    Conclusion

For the reasons stated herein, the Court finds that the continued enforcement of the rent abatement established in the Contempt Order is not excepted from the automatic stay under the police and regulatory exception of § 362(b)(4), and is therefore stayed pursuant to § 362(a). However, due to the Consent Order, the Court limits its ruling at this time to those rent abatement procedures beginning December 1, 2023 and reserves the question of any abatement activity between the Petition Date and November 30, 2023. The balance of the Contempt Order, including the calculation or entry of a money judgment against the Debtor, are excepted from the automatic stay pursuant to the police and regulatory exception of § 362(b)(4).

[Signed and dated above.]

Copies to: recipients of electronic notifications.