UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | |
| | Case No. 23-00246-ELG |
| MP PPH LLC, | Chapter 11 |
| Debtor. | |

**[FOURTH REVISED]**
**DEBTOR'S PLAN OF LIQUIDATION**

## I. INTRODUCTION

Pursuant to § 1121 of the Bankruptcy Code, MP PPH LLC, debtor and debtor-in-possession in the above-captioned bankruptcy case, by and through its attorneys, hereby respectfully submits the Debtor's Plan of Liquidation pursuant to the provisions of the Bankruptcy Code. The Debtor is the proponent of the Plan within the meaning of Bankruptcy Code § 1129. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of (i) the Debtor's history, businesses and operations, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including the proposed sale of the Debtor's primary asset. Subject to certain restrictions and requirements set forth in Bankruptcy Code § 1127 and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ CAREFULLY THE PLAN AND THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO), EACH IN ITS ENTIRETY.**

## II. DEFINITIONS

The following terms (which appear in this Plan as capitalized terms), when used in this Plan, have the meanings set forth below:

**"Administrative Expense Claim(s)"** means a claim for administrative costs or expenses that are allowable under Bankruptcy Code § 503(b) or 28 U.S.C. § 1930. These costs or expenses may include: (a) actual, necessary costs and expenses of preserving the Debtor's Estate after the Petition Date but prior to the Effective Date, including the DIP Loan Claim; (b) Professional Fee Claims; (c) Administrative Tax Claims; (d) the Break-Up Fee; and (e) fees or charges assessed against the Estate under 28 U.S.C. § 1930.

**"Administrative Expense Claims Bar Date"** means thirty (30) days after the Effective Date, with respect to Administrative Expense Claims (except for Professional Fee Claims and the Break-Up Fee) for services rendered or expenses incurred from the Petition Date through the Effective Date relating to or arising out of any period after the Petition Date.

**"Administrative Expense Claims Objection Date"** means the last day for filing an objection to any request for the payment of an Administrative Expense Claim other than a Professional Fee Claim, which shall be the later of (a) sixty (60) days after the Effective Date or (b) such other date specified in this Plan or ordered by the Bankruptcy Court. The filing of a motion to extend the Administrative Expense Claims Objection Date shall automatically extend the Administrative Expense Claims Objection Date until a Final Order is entered on such motion. In the event that such motion to extend the Administrative Expense Claims Objection Date is denied by the Bankruptcy Court, the Administrative Expense Claims Objection Date shall be the later of the current Administrative Expense Claims Objection Date (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Administrative Expense Claims Objection Date.

**"Administrative Tax Claim"** means a Claim that is not an Allowed Secured Claim and that a government unit asserts against the Debtor either for taxes or for related interest or penalties for any tax period that, in whole or in part, falls within the period beginning on the date of the Petition Date and ending on the Effective Date.

**"Allowed Administrative Expense Claim"** means an Administrative Expense Claim that is allowed as set forth in Section IV.A.1 of the Plan.

**"Affiliate"** means an affiliate as that term is defined in Bankruptcy Code § 101(2).

**"Allowed Claim"** means a Claim, other than an Administrative Expense Claim, (i) allowed by Final Order of the Bankruptcy Court, (ii) proof of which was timely filed on or before the Claims Bar Date or (iii) if no proof of Claim has been timely filed, which has been or hereafter is listed in the Bankruptcy Schedules as liquidated in amount and not disputed or contingent, and in each such case in clauses (ii) and (iii) above, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order. Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date. Moreover, any Claim or portion of a Claim that was or is satisfied or released during the Case is not an Allowed Claim. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim which the Debtor may hold against the Holder thereof, to the extent that such Claim may be set off pursuant to applicable law.

**"Allowed Class '**' Claim"** means an Allowed Claim in the particular class described.

**"Alternative Transaction"** means an offer for sale of the Property at the Auction to a party other than Clear Investments for a purchase price of at least $59,550,000.00.

**"Arbor Realty"** means Arbor Realty SR, Inc.

**"Assets"** means all assets of the Debtor's Estate including, but not limited to, "property of the estate" as described in § 541 of the Bankruptcy Code.

**"Auction"** means the sale of the Property pursuant to Bid Procedures and Auction Procedures approved by the Bankruptcy Court.

"**Auction Procedures**" means those procedures approved by the Bankruptcy Court to govern the sale of the Property at the Auction.

**"Avoidance Action"** means any Causes of Action arising under Bankruptcy Code §§ 542, 543, 544, 547, 548, 549, 550, 551, 552, and 553 or under related state or federal statutes and common law, including without limitation all fraudulent conveyance laws, fraudulent transfer laws, and all non-bankruptcy laws that may be brought by or on behalf of the Debtor or the Estate and any and all rights of the Debtor and the Estate to avoid, rescind, or recover on account of transfers, whether or not litigation is commenced to prosecute such Cause of Action.

**"Bankruptcy Code"** means Title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Case.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the District of Columbia.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

**"Bankruptcy Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor, as the same may have been amended from time to time.

**"Beneficiary"** means a Holder of a Liquidating Trust Interest, whether individually or as agent on behalf of one or more other Entities. To the extent Holders of Allowed Claims are entitled to a Distribution from the Liquidating Trust pursuant to the terms of the Disclosure Statement and Plan, such Holders are each a Beneficiary.

**"Bid Procedures"** means those procedures approved by the Bankruptcy Court to govern bidding at a sale of the Property through the Auction.

**"Bid Protections"** means the protections afforded in the Bid Procedures to the Stalking Horse Bidder including the Break-Up Fee to be paid to Clear Investment in the event of an Alternate Sale.

**"Bid Procedures Motion"** means the motion filed by the Debtor on May 24, 2024 to seek Bankruptcy Court approval of the form of the Sale Agreement, approve Clear Investment as the proposed Stalking Horse Bidder, and seek approval of Bid Protections, Bid Procedures, and Auction Procedures to govern the Auction.

**"Break-Up Fee"** means a payment to Clear Investment, the Stalking Horse Bidder, of $500,000.00 in the event of an Alternate Sale.

**"Business Day"** means any day other than a Saturday, Sunday or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

**"Buyer"** means the successful bidder at the Sale of the Property.

**"Case"** means the above-captioned case commenced by the Debtor in the Bankruptcy Court, which has been designated Case No 23-00246-ELG.

**"Case Closing Date"** means the date the Bankruptcy Court enters an order closing the Debtor's Chapter 11 Case.

**"Cash"** means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

**"Causes of Action"** means any and all claims, demands, rights, actions, causes of action and suits of the Debtor and the Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to claims or interests; (3) claims pursuant to § 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Avoidance Actions; (6) claims for tax refunds; (7) claims pursuant to § 510 of the Bankruptcy Code, and (8) § 506(c) Claims; and (9) any other claims which may be asserted against third parties, unless previously settled by the Trustee.

**"Claim"** means a claim as that term is defined in Bankruptcy Code § 101(5).

**"Claims Bar Date"** means, with respect to Claims filed by Creditors other than Government Agencies, January 11, 2024, which is the last date for Creditors other than Government Agencies to file Claims against the Estate pursuant to the Notice of Chapter 11 Bankruptcy Case, and with respect to Claims filed by Government Agencies, February 27, 2024, which is the last date for Government Agencies to file Claims against the Estate pursuant to the Notice of Chapter 11 Bankruptcy Case; and with respect to Claims filed by the Debtor on behalf of Creditors, March 28, 2024, which is the last date for the Debtor to file Claims on behalf of Creditors against the Estate pursuant to Federal Rule of Bankruptcy Procedure 3004.

**"Claims Objection Deadline"** means the last day for filing objections to General Unsecured Claims, which day shall be the later of (a) thirty (30) days after the Effective Date or (b) thirty (30) days after the Claims Bar Date, or (c) such other date as the Bankruptcy Court may order. The Debtor may seek a one-time automatic extension of the Claims Objection Deadline by filing a notice of extension of the Claims Objection Deadline, which shall automatically extend the Claims Objection Deadline until the date specified in such notice up to an additional thirty (30) days after the current Claims Objection Deadline. Thereafter, any further extension of the Claims Objection Deadline shall require bankruptcy court approval, and may be granted only upon a showing of exigent circumstances. In the event that such a motion to further extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the current Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to further extend the Claims Objection Deadline. For the avoidance of doubt, after the Effective Date, no Person other than the Debtor shall be authorized to file objections to Claims other than Professional Fee Claims.

**"Claims Register"** means the register of filed Proofs of Claim maintained by the Bankruptcy Court on the docket of the Bankruptcy Case.

**"Class"** or **"Classes"** means a group of Claims as classified in Article IV of the Plan.

**"Clear Investment"** means Clear Investment Group, LLC, counterparty to the Sale Agreement, and the Stalking Horse Bidder for the sale of the property.

**"Confirmation"** means the entry of an Order by the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

**"Confirmation Hearing"** means the hearing regarding Plan Confirmation.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan under Bankruptcy Code § 1129.

**"C.P.P.A./Housing Claim"** means all Claims of any Creditors arising out of the ownership or management of the Property, which were brought under District of Columbia housing laws or arising under the Consumer Protection Procedures Act, D.C. Code §§ 28-3901–3913 or similar acts, as well as all Proofs of Claims filed by any party that references or relates to the C.P.P.A. as all or part of a Creditors' Claim or a Creditors' Proof of Claim. The C.P.P.A./Housing Claims include the litigation brought by the District of Columbia Civil Division against the Debtor in Case No. 2021-CA-2209-B (the "Superior Court Case").

**"Creditor"** means a creditor as that term is defined in Bankruptcy Code § 101(10).

**"Debtor"** means MP PPH, LLC.

**"DIP Loan Claim"** means the Claim of PP&H Realty for post-petition financing authorized under *the Final Order Approving Post-Petition Financing and Continuing Existing Credit Agreement* entered in the Bankruptcy Case on September 18, 2023 at ECF Dkt. No. 39 as increased pursuant to the order entered in the Bankruptcy Case on May 8, 2024 at ECF Dkt. No. 519 and any approved extensions thereto.

**"Disclosure Statement"** means the Disclosure Statement with Respect to Debtor's Plan of Liquidation, as may be amended.

**"Disclosure Statement Order"** means the order entered by the Bankruptcy Court approving, or dispensing of the need for approval of, the Disclosure Statement.

**"Disputed Claim"** means a Claim:

(a) as to which a proof of claim is filed or is deemed filed under Bankruptcy Rule 3003(b)(1) or a proof of interest is filed or is deemed filed under Bankruptcy Rule 3003(b)(2); and

(b) as to which either (1) an objection has been timely filed and has neither been overruled nor been denied by a Final Order and has not been withdrawn; or (2) the claim

on its face recites that the amount of claim is "contingent," "disputed," "unliquidated" or the amount purportedly owed is $0.00; or (3) the Claim is not otherwise an Allowed Claim.

**"Distribution"** means any transfer under the Plan of Cash or other property or instruments to either a Holder of an Allowed Administrative Expense Claim or a Holder of an Allowed Claim. A Distribution is made at the time the Debtor or a Liquidating Trustee writes a check, initiates a wire, or otherwise sends or transmits a payment.

"**Distribution Date**" means the first possible date for Distributions to Holders of Allowed Claims from the Net Proceeds, which date shall be determined by the Liquidating Trustee.

**"Distribution Record Date"** shall be the Confirmation Date. On this date, the Claims Register is closed and no further changes in the Claims Register will be recognized.

**"District C.P.P.A./Housing Claim"** means the Claim brought by the District of Columbia Civil Division against the Debtor in Case No. 2021-CA-2209-B (the "Superior Court Case") and asserted in the Bankruptcy Case as Claim No. 4 in the Claims Register.

**"Effective Date"** is the date of the closing of the Sale of the Property.

**"Entity"** has the meaning set forth in § 101(15) of the Bankruptcy Code.

**"Estate"** means the bankruptcy estate of the Debtor.

**"Exculpated Parties"** means the Persons referenced in Section X.C.1 of the Plan, and includes the Estate, the Debtor, any officer or manager of the Debtor, the Professionals, and those parties' representatives, successors, and assigns.

**"Executory Contracts"** means those agreements or obligations which are not fully performed by the Debtor and are subject to assumption or rejections pursuant to §365 of the Bankruptcy Code.

**"Final Fee Applications"** means the final requests or applications for payment of Professional Fee Claims.

**"Final Order"** means an order or judgment of a court of competent jurisdiction entered on such court's official docket:

(a) that has not been reversed, rescinded, stayed, modified, or amended;

(b) that is in full force and effect; and

(c) with respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a *writ of certiorari* has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or *writ of certiorari* is pending; or (2) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a *writ of certiorari* was sought.

**"General Unsecured Claim"** means a Claim that is not an Administrative Expense Claim, a Priority Tax Claim, a Non-Tax Priority Claim, or a Secured Claim.

**"Governmental Agency(y)(ies)"** means any department or agency of the United States of America or any state, including quasi-governmental agencies, acting through, or funded by any such department or agency, through state or federal government charter, or otherwise.

**"Holder"** means the holder of a Claim or interest.

**"Insider"** means an insider as that term is defined in Bankruptcy Code § 101(31).

**"Intercompany Claim"** means shall mean a General Unsecured Claim held by an Insider.

“**Impaired**” means, with respect to any Class of Claims, such Claims that will not be paid in full through this Plan, or the rights of which will be modified pursuant to the Plan.

**"Liquidating Trust"** means the trust established upon confirmation of this Plan for the purpose of pursuing or liquidating the Liquidating Trust Assets; reconciling and objecting to Claims, as provided for in the Plan; and making Distributions to the Beneficiaries.

"**Liquidating Trust Agreement**" means the agreement establishing and providing for the terms of the Liquidating Trust as provided for in Section VI.C of the Plan. A proposed copy of the Liquidating Trust Agreement shall be provided as a supplement to the Plan for review prior to the Confirmation Hearing.

**"Liquidating Trust Assets"** shall consist of all Assets of the Estate as of the Effective Date, including, but not limited to, (i) Cash, (ii) Causes of Action, (iii) Avoidance Actions, (iv) any proceeds realized or received from such Assets, (v) all rights of setoff, recoupment, and other defenses against Claims, (vi) all rights under the Sale Agreement and any other documents related to the Sale, (vii) all bank accounts (as set forth in the Liquidating Trust Agreement), (viii) all interests in insurance policies held by the Debtor, and (ix) all documents, communications, and information protected by the attorney-client privilege, the work-product privilege, and any other applicable evidentiary privileges.

**"Liquidating Trustee"** shall be Bradley D. Jones, Esq. or such other Person appointed as trustee of the Liquidating Trust established pursuant to this Plan.

**"Liquidating Trust Expenses"** means all reasonable legal and other fees and expenses incurred by the Liquidating Trustee on account of administration of the Liquidating Trust, including, without limitation, reasonable attorneys’ fees and expenses, insurance costs, taxes, escrow expenses and all other costs of administering the Liquidating Trust in accordance with the Disclosure Statement, Plan, and the Liquidating Trust Agreement.

**"Liquidating Trust Interests"** shall mean the non-transferable interests in the Liquidating Trust that are issued to the Beneficiaries pursuant to the Disclosure Statement and Plan.

**"Local Rules"** means the Local Bankruptcy Rules for the Bankruptcy Court, as now in effect or hereafter amended and applicable to the Case.

“**Net Proceeds**” means the recoveries from the liquidation of the Assets net of or after payment of expenses associated with such liquidation and the Expenses of the Liquidating Trustee's administration of the Liquidating Trust Agreement, including amounts obtained from the settlement of or prosecution of Retained Causes of Action, and the Sale Proceeds.

**"Non-Tax Priority Claim"** means a Claim, other than and without duplication of an Administrative Expense Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to Bankruptcy Code §§ 507(a)(3), (4), (5), or (7).

**"Person"** means any natural person or Entity.

**"Petition Date"** means August 31, 2023.

**"Plan"** means this Debtor’s Plan of Liquidation, as it may be amended or supplemented.

**"Plan Document"** means this Plan, and any Exhibits thereto.

**"Plan Participants"** means the Persons entitled to exculpation as provided in Article IX of the Plan.

**"Post-Effective Date Expenses"** means any expenses incurred by the Debtor after the Effective Date including, but not limited to, professional fees and expenses incurred by the Debtor, fees payable to the United States Trustee, and premiums related to any bond or insurance policy, and reasonable expenses incurred by the Debtor in the ordinary course of business.

**"Post-Petition"** means the time after the Petition Date.

**"Priority Tax Claim"** means a Claim entitled to priority against the Debtor under Bankruptcy Code § 507(a)(8), or which is secured by the Assets of the Debtor.

**"Professional Fee Claim"** means a Claim under Bankruptcy Code §§ 326, 327, 328, 330, 331, 503(b), or 1103 for compensation for services rendered by any of the Professionals, or related expenses, incurred after the Petition Date but prior to the Effective Date on behalf of the Estate.

**"Professional Fee Claim Bar Date"** is the deadline for filing applications for the allowance of Professional Fee Claims as set forth in Section IV.A.2.

**"Professionals"** means the professionals (attorneys, accountants, appraisers, financial advisors, and the like) employed by the Estate with the approval of the Bankruptcy Court at the expense of the Estate pursuant to §§ 327 and/or 328 of the Bankruptcy Code as well as all parties required to file applications for the allowance of Professional Fee Claims pursuant to Federal Rule of Bankruptcy Procedure 2016(a).

**"Proof of Claim"** means any claim appearing on the Claims Register for this Bankruptcy Case.

**"Property"** means the 674-unit multifamily apartment complex located in the 2300 block of Good Hope Road SE known as "Marbury Plaza."

**“Qualified Bid”** means an offer to purchase the Property that conforms, to the Debtor’s satisfaction, to bid requirements as outlined in the Bid Procedures Motion.

**"Rejection Damage Claim"** means a Claim for damages arising under an unexpired lease of real or personal property or an executory contract that the Debtor rejects under Bankruptcy Code § 365 or pursuant to the terms of this Plan.

**"Retained Causes of Action"** shall mean all causes of action the Estate has against any party that may be enforced by the debtor or by the Liquidating Trustee and retained for the benefit of the Estate pursuant to 11 U.S.C. § 1123(b)(3)(B). The Retained Causes of Action shall include, but not be limited to, all claims listed in the Debtor's bankruptcy schedules and statement of financial affairs, all causes of action existing under chapter 5 of the Bankruptcy Code, and specifically include: (i) litigation claims against Vantage Management, Inc. a/k/a Edgewood Management Corporation, and their insurers including those claims asserted as adversary proceeding 24-10022-ELG pending before this Court; and (iii) breach of contract or warranty claims against RSC Electrical & Mechanical Contractors, Inc. and Jonathan Bolden and their insurers. However, the failure to specifically list a cause of action in this definition shall not preclude a cause of action belonging to the Estate from being a Retained Cause of Action. All causes of action belonging to the Estate are expressly preserved for the Liquidating Trustee to pursue for the benefit of the Estate and its creditors.

**"Sale"** means a sale of the Property, which given the single asset real estate nature of the bankruptcy case, will effect a sale of substantially all of the assets of the Debtor.

**"Sale Agreement"** means the Agreement to Purchase Real Estate between the Debtor and Clear Investment for the sale of the Property, as amended.

**"Sales Proceeds"** means all proceeds of the sale of the Property after payment of Allowed Claims on the Effective Date pursuant to the terms of the Plan.

**"Section 506(c) Claim"** means any surcharge claim asserted by the Debtor after the Effective Date pursuant to § 506(c) of the Bankruptcy Code.

**"Secured Claim"** means a Claim that is secured by a valid and unavoidable lien against property in which an Estate has an interest or that is subject to setoff under Bankruptcy Code § 553. A Claim is a Secured Claim only to the extent of the value of the claimholder’s interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code § 506(a).

**"Seller"** means the Debtor.

**"Stalking Horse Bidder"** means Clear Investment Group, LLC or its assigns, the Court approved Stalking Horse Bidder for the Property under the Bid Procedures and Auction Procedures.

**"Tenant"** means a party to a lease with the Debtor under which the Debtor is a landlord.

**"Tenant Lease"** means any agreement between the Debtor and any Tenant for the lease of real property, which is in effect as of the Effective Date.

**"Tenant C.P.P.A./Housing Claim"** means any C.P.P.A/Housing Claim other than the District C.P.P.A./Housing Claim.

**"Unclaimed Distributions"** means any Cash or other property which is unclaimed for ninety (90) days after its Distribution. Unclaimed Distributions will be treated in the manner set forth in Section VII.G.

**"U.S. Trustee"** means the Office of the United States Trustee.

## III. RULES OF INTERPRETATION

The rules of construction in Bankruptcy Code § 102 apply to this Plan.

1. A capitalized term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

2. The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement.

3. Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

4. Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.

5. Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

6. Unless otherwise indicated, the phrase "in the Plan," "in this Plan," "under the Plan," "under this Plan," and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

7. Unless otherwise specified, all references to Articles or Exhibits are references to this Plan's Articles or Exhibits.

8. Article captions and headings are used only as convenient references and do not affect this Plan's meaning.

9. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of the District of Columbia shall govern the construction and

implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

10. All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein.

## IV. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan divides Creditors into Classes based on their legal rights and interests and provides for the satisfaction of Claims from the sale of the Property and Liquidating Trust Assets. This Article classifies Claims, except for Administrative Expense Claims and Priority Tax Claims, which are not classified, for all purposes, including confirmation and distribution under the Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description. To the extent that part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class. The following table summarizes the Classes of Claims and Interests under this Plan.

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS | PROJECTED RECOVERY |
|---|---|---|---|---|
| Class 1 | Non-Tax Priority Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept | 100% |
| Class 2 | Secured Claims of Municipal Authorities and Utility Lienholders | Unimpaired | Not Entitled to Vote, Deemed to Accept | 100% |
| Class 3 | Secured Claim of Arbor Realty SR, Inc. | Impaired | Entitled to Vote | 100% |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote | Dependent on Sale Recoveries |
| Class 5 | C.P.P.A./Housing Claims | Impaired | Entitled to Vote | Dependent on Sale Recoveries |
| Class 6 | Intercompany Claims | Impaired | Not entitled to Vote, Deemed to Reject. | 0% |
| Class 7 | Interests | Impaired | Not Entitled to Vote, Deemed to Reject | 0% |

The treatment in this Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each Holder of an Allowed Claim may have in or against the Debtor, the Estate or its property. This treatment supersedes and replaces any agreements or rights those Holders have in or against the Debtor, the Estate or property of the Debtor or the Estate. All Distributions under the Plan will be tendered to the Person holding the Allowed Claim. **EXCEPT**

**AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

### A. Allowance of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims)

Persons that hold Administrative Expense Claims and that do not timely file and serve a motion or application seeking payment in accordance with this Article and the Bankruptcy Code by the deadlines set forth below will be forever barred from asserting those Administrative Expense Claims.

However, in the event the Property is sold through an Alternative Transaction, the Stalking Horse Bidder will be entitled an Allowed Administrative Expense Claim in the amount of the Break-Up Fee upon closing of the Alternative Transaction without the necessity of the Stalking Horse Bidder filing a separate motion or application.

#### 1. Allowed Administrative Expense Claims Other than Professional Fee or Previously Allowed Claims

An Administrative Expense Claim that is not a Professional Fee Claim, the DIP Loan Claim, or the Break-Up Fee will be allowed only if, on or before the Administrative Expense Claims Bar Date, the Person holding the Claim both filed with the Bankruptcy Court a motion or application requesting that the Debtor pay the Claim and served the motion or application on the Debtor and the U.S. Trustee. Persons seeking allowance of an Administrative Expense Claim under this paragraph shall be required to file a notice that the deadline to object to such allowance shall be the Administrative Expense Claims Objection Deadline. Provided, however, that the Debtor, or Liquidating Trustee as applicable, may elect to deem an Administrative Expense Claim (other than a Professional Fee Claim) incurred in the ordinary course of the Debtor's business to be treated as an Allowed Administrative Expense Claim in accordance with the terms and conditions of the particular transaction that gave rise to the Claim without requiring the Person holding such Administrative Expense Claim to file a request for payment.

Any objection to an Administrative Expense Claim must be filed by the Administrative Expense Claims Objection Deadline. In the event that an objection is timely filed to an Administrative Expense Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Expense Claim.

#### 2. Allowed Professional Fee Claims

Final Fee Applications must be filed no later than forty-five (45) days after the Effective Date (the "Professional Fee Claim Bar Date"). Final Fee Applications will be noticed in accordance with the Bankruptcy Rules and Local Rules. Objections, if any, shall be filed in accordance with the Bankruptcy Rules and Local Rules and served on the Professional whose Final Fee Application is being objected to, the Debtor or Liquidating Trustee, as applicable, and the Office of the U.S. Trustee. Failure to properly object to a Final Fee Application constitutes a waiver of a party's right to object to a Final Fee Application.

**3. Allowed Priority Tax Claims**

The Claim of any Person holding a Priority Tax Claim will be allowed only if such Person filed a Claim prior to the Claims Bar Date and no objection to the Priority Tax Claim is filed by the Claims Objection Deadline.

In the event that an objection is timely filed to a Priority Tax Claim, the Bankruptcy Court shall determine the allowed amount of such Priority Tax Claim. In the event that no objection is timely filed to an otherwise properly filed Priority Tax Claim, such Priority Tax Claim shall be deemed allowed in the amount requested.

**B. Treatment of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims)**

**1. Administrative Expense Claims**

Except to the extent that a Holder of an Allowed Administrative Expense Claim, including the DIP Loan Claim, agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive from the Debtor, or the Liquidating Trustee, as applicable, in full and complete settlement, satisfaction and discharge of its Allowed Administrative Expense Claim, on the later to occur of (i) the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, Cash equal to the unpaid portion of such Allowed Administrative Expense Claim; provided, however, that Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto by the Debtor. Holders of Administrative Expense Claims will be paid in full on account of their Claims and are not entitled vote on this Plan.

The DIP Loan Claim was allowed by virtue of previously entered Court Orders. However, at this time, and subject to the results of the Auction, it is anticipated that the Holder of the DIP Loan Claim will agree to forgo payment from the proceeds of Sale in order to allow for the Plan to be confirmed. The DIP Loan Claim retains its rights to share in other Distributions made pursuant to this Plan, including its entitlement to share in any litigation recoveries that result from the Retained Causes of Action.

**2. Priority Tax Claims**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive from the Debtor, or Liquidating Trustee, as applicable, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim, with Post-Petition interest at the Federal Judgment Rate in effect on the Petition Date on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim. Holders of Priority Tax Claim will be paid in full on account of their Claims and are not entitled to Vote on this Plan.

**C. Classified Claims**

**1. Classification and Treatment of Non-Tax Priority Claims (Class 1)**

Classification: Class 1 consists of all Non-Tax Priority Claims.

Treatment: Provided that a Non-Tax Priority Claim has not been paid prior to the Effective Date, and except to the extent that a Holder of a Non-Tax Priority Claim agrees to a different treatment, each Holder of an Allowed Non-Tax Priority Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Non-Tax Priority Claim, on the later to occur of (i) the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, Cash equal to the unpaid portion of such Allowed Non-Tax Priority Claim, with Post-Petition interest at the Federal Judgment Rate in effect on the Petition Date. Class 1 is unimpaired under this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class 1 Claims are not entitled to vote to accept or reject this Plan.

The Debtor does not believe there are any Holders of Non-Tax Priority Claims.

**2. Classification and Treatment of Secured Claims of Municipal Authorities and Utility Lienholders (Class 2)**

Classification: Class 2 consists of the Secured Claims of Municipal Authorities and Utility Lienholders.

Treatment: Except to the extent that a Holder of an Allowed Class 2 Claim agrees to a different and lesser treatment, each Holder of an Allowed Class 2 Claim shall receive from the Debtor or Liquidating Trustee as applicable, in full and complete settlement, satisfaction and discharge of its Allowed Class 2 Claim, at the time of closing of Sale of the Property (or as soon as reasonably practicable thereafter), payment in full of its Allowed Class 2 Claim, with Post-Petition interest at the Federal Judgment Rate in effect on the Petition Date.

Holders of Class 2 Claims will retain their liens until the Property is sold.

Holders of Class 2 Claims are unimpaired and are not entitled to vote to accept or reject this Plan.

**3. Classification and Treatment of Secured Claim of Arbor Realty (Class 3)**

Classification: Class 3 consists of the Secured Claim of Arbor Realty.

Treatment: Except to the extent that the Holder of the Allowed Class 3 Claim agrees to a different and lesser treatment, the Holder of the Allowed Class 3 Claim shall receive from the Debtor, or Liquidating Trustee, as applicable, in full and complete settlement, satisfaction and discharge of its Allowed Class 3 Claim, at the time of closing of Sale of the Property (or as soon as reasonably practicable thereafter), payment in full of its Allowed Class 3 Claim, with Post-Petition interest at the non-default rate.

The Holder of the Class 3 Claim will retain its lien until the Property is sold.

The Holder of the Class 3 Claims is impaired by virtue of depression of its claim to the non-default rate, and is entitled to vote to accept or reject this Plan.

**4. Classification of General Unsecured Claims (Class 4)**

Classification: Class 4 consists of Holders of General Unsecured Claims, except those Claims classified as C.P.P.A./Housing Claims.

Treatment: Except to the extent that a Holder of an Allowed Class 4 Claim agrees to a different and lesser treatment, each Holder of an Allowed Class 4 Claim shall receive from the Liquidating Trustee as provided for in the Liquidating Trust Agreement, in full and complete settlement and satisfaction of the Debtor's and Liquidating Trust's payment obligations under the Plan towards the Allowed Class 4 Claim, such Holder's pro rata share of the portion of the Liquidating Trust Assets remaining after payment of the Unclassified Claims and Class 1-3 Allowed Claims, and as more fully set out in Article VI of the Plan.

Allowed Class 4 Creditors retain the right to share in all of the Net Proceeds of the Liquidating Trust. However, it is anticipated that the most immediate source of payment to Class 4 Creditors will be from any remaining proceeds of the Sale of the Property. Following the Sale of the Property contemplated by this Plan, the Proceeds will be used to pay creditors in Classes 1-3. The remaining proceeds will be paid to holders of Allowed Class 4 and Allowed Class 5 Claims, with the payment to be made pro rata.

Holders of Class 4 Claims are impaired and are entitled to vote to accept or reject this Plan.

**5. Classification of C.P.P.A./Housing Claims (Class 5)**

Classification: Class 5 consists of all Holders of C.P.P.A./Housing Claims. For the purposes of clarity, the Class 5 Claims consist of the DC C.P.P.A./Housing Claim and Holders of Tenant C.P.P.A./Housing Claims to the extent such claims become Allowable.

Treatment: Except to the extent that a Holder of an Allowed Class 5 Claim agrees to a different and lesser treatment, each Holder of an Allowed Class 5 Claim shall receive from the Liquidating Trustee as provided for in the Liquidating Trust Agreement, in full and complete settlement and satisfaction of the Debtor's and Liquidating Trust's payment obligations under the Plan towards the Allowed Class 5 Claim, such Holder's pro rata share of the portion of the Liquidating Trust Assets serving as the Liquidating Trust Assets remaining after payment of the Unclassified Claims and Class 1-3 Allowed Claims, and as more fully set out in Article VI of the Plan.

Allowed Class 5 Creditors retain the right to share in all of the Net Proceeds of the Liquidating Trust. However, it is anticipated that the most immediate source of payment to Class 5 Creditors will be from any remaining proceeds of the Sale of the Property. Following the Sale of the Property contemplated by this Plan, the Proceeds will be used to pay creditors in Classes 1-3. The remaining proceeds will be paid to holders of Allowed Class 4 and Allowed Class 5 Claims, with the payment to be made pro rata.

Holders of Allowed Class 5 Claims are impaired and are entitled to vote to accept or reject this Plan.

**6. Classification of Intercompany Claims (Class 6)**

Classification: Class 6 consists of Holders of Intercompany Claims.

Treatment: Holders of Intercompany Claims shall receive no Distribution on account of their Intercompany Claims.

Holders of Class 6 Claims are impaired but are not entitled to vote to accept or reject this Plan.

**7. Classification of Interests (Class 7)**

Classification: Class 7 consists of Holders of Interests.

Treatment: All Interests shall be extinguished as of the Effective Date, and owners thereof shall receive no Distribution on account of such Interests.

Holders of Class 7 Claims are impaired but are not entitled to vote to accept or reject this Plan.

**Reservation of Rights Regarding Claims and Interests of the Estate**. Except as otherwise explicitly provided in the Plan nothing shall affect Debtor's or the Liquidating Trustee's rights and defenses, both legal and equitable, with respect to any Claims or Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment. All such defenses are included as Retained Causes of Action of the Estate.

## V. IMPLEMENTATION OF THE PLAN

### A. Plan Objectives

The Plan will be implemented by, among other things, the liquidation and satisfaction of the Debtor's debts through a sale of its Property and the creation of a Liquidating Trust to receive, further liquidate as necessary, and, distribute all Assets of the Debtor to the Allowed Claimants. Regarding sale of the Property, the Debtor has executed the Sale Agreement with Clear Investment Group, LLC, which shall serve as an entry level bid for sale of the Property upon which higher and better bids for sale of the Property may be obtained in an auction process whose terms are to be established through a bidding process established though a separate Bidding Procedures Motion filed by the Debtor.

With the establishment of the Liquidating Trust, the Plan proposes the transfer to the Liquidating Trust of the Liquidating Trust Assets, including, without limitation, all Cash, including the remaining proceeds to be derived from sale of the Property following successful closing and payment of associated closing costs and Allowed Secured Claims, and the Debtor's Retained Causes of Action. Distributions by the Liquidating Trust shall then be made in accordance with the Plan and Liquidating Trust Agreement.

### B. Sale of the Property

The real estate broker Marty Zupancic of Marcus & Millichap Real Estate Investment Services of North Carolina, Inc. as realtors ("Realtors") for the estate marketed the Property from October 4, 2023 through May 21, 2024 and received approximately five (5) meaningful offers. In conjunction with the Realtors, the Debtor narrowed the offers and then selected a prospective buyer that would close promptly and be a successful and responsible owner of the Property.

A motion to approve bid procedures ("Bid Procedures Motion") was filed with this Court on May 24, 2024. A copy of the resulting Sale Agreement with Clear Investment was filed with the Bid Procedures Motion. The proposed base sale price in the Sale Agreement is $58.8 million. The sale provides the tax savings pursuant to the transfer tax exemption found in § 1146(a) of the Bankruptcy Code, which pursuant to the Sale Agreement inure to the benefit of the Estate.

Approval of the sale of the Property is sought pursuant to confirmation of the Plan and is subject to higher and better offers. If one or more Qualified Bids are obtained, the Property will be sold through an Auction conducted in accordance with Auction Procedures and Bid Procedures approved by the Court with Clear Investment, the Stalking Horse Bidder, receiving the Bid Protections authorized by the Court. If the Auction results in the Property being sold in an Alternative Transaction, Clear Investment will receive payment of the Break-Up Fee. If the Property is not sold in an Alternative Transaction, the Property will be sold to Clear Investment under the terms of this Plan, the Confirmation Order, and the Sale Agreement.

Pursuant to 11 U.S.C. § 363(f), the Sale of the Property is to be free and clear of all liens and interests, with all liens and interests attaching to the Sale Proceeds in the order and amount that they attached to the Property. The sale is subject to notice and hearing requirement of the Bankruptcy Code, Bankruptcy Rules and the Local Rules of the Bankruptcy Court. The sale is subject to an Order of the Bankruptcy Court approving the sale 1) as a component of the

Confirmation Order, or 2) through a separate motion authorizing sale free and clear of liens. The Property will be sold in its "as-is" condition as of the date of closing. No sale commission will be due except upon successful sale and settlement. The Property conveys as tenanted. The tenants have no rights under the Tenant Opportunity to Purchase Act ("TOPA") because this is a sale through a Chapter 11 bankruptcy process and plan. The successful purchaser at the Auction will be a good faith purchaser entitled to protection under 11 U.S.C. § 363(m).

As more fully discussed in the Bid Procedures Motion, a number of orders were entered in the Superior Court of the District of Columbia Case No. 2021-CA-2209-B. The orders entered in that case are not a lien on the Property. The sale of the Property will be free and clear of any interests or obligations created by those orders. The purchaser will remain subject to generally applicable D.C. housing law.

**C. Use of Sales Proceeds**

Upon the closing of the Sale of the Property, the proceeds of sale will be used to pay Creditors pro rata in accordance with the priority scheme established by the Bankruptcy Code. Classes 1–3 will be paid in full from the proceeds of sale or in accordance with such treatment as Holders of those claims otherwise agree. The funds remaining from the proceeds of sale after payment of Creditors in Classes 1–3 will be provided to the Liquidating Trustee and used to make payments to Creditors in Class 4 and Class 5.

If the Property is sold pursuant to an Alternative Transaction the Break-Up Fee will have priority over and be paid ahead of all other Allowed Administrative Expense Claims and will be payable out of the proceeds from, and paid at the closing of the Alternative Transaction. Pursuant to the Sale Agreement, the obligation to pay the Break-Up Fee as a result of an Alternative Transaction shall survive termination of this Agreement and shall constitute an Allowed Administrative Expense Claim under Section 503(b)(1)(A) of the Bankruptcy Code, which shall be a superpriority Administrative Expense Claim senior to all other Administrative Expense Claims and payable out of the proceeds from any Alternative Transaction, prior to any recovery by any other Creditor under Section 364(c)(1) of the Bankruptcy Code.

**D. Debtor's Directors and Officers**

On the Effective Date, each of the Debtor's directors, officers, members, and managers shall be terminated automatically without the need for any corporate action or approval and without the need for any corporate filings, and shall have no continuing obligations to Debtor’s following the occurrence of the Effective Date.

**E. Wind-Up and Dissolution of the Debtor**

The Debtor shall be dissolved automatically effective on the Effective Date without the need for any corporate action or approval and without the need for any corporate filings, and neither the Debtor nor the Liquidating Trustee shall be required to pay any taxes or fees to cause such dissolution. On the Effective Date or as soon thereafter as is reasonably practicable, the Liquidating Trustee shall wind-up the affairs of Debtor, if any, and file final tax returns for the Debtor. The Liquidating Trustee shall, on and after the Effective Date, shall have the authority to control, cause, or otherwise act on behalf of the Debtor as may be needed to undertake actions in

furtherance of the Plan and to facilitate an orderly wind-up. The Liquidating Trust shall bear the cost and expense of the wind-up Debtor's affairs, if any, and the cost and expense of the preparation and filing of the final tax returns for the Debtor.

## VI. ESTABLISHMENT OF THE LIQUIDATING TRUST

### A. Creation and Governance of the Liquidating Trust

On the Effective Date, the Debtor and the Liquidating Trustee shall execute the Liquidating Trust Agreement and take all steps necessary to establish the Liquidating Trust in accordance with the Plan and the beneficial interests therein, which shall be for the benefit of the Beneficiaries. Additionally, on the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust all of its rights, title, and interest in and to all of the Liquidating Trust Assets, and in accordance with Bankruptcy Code § 1141. Except as specifically provided in the Plan or the Confirmation Order, the Liquidating Trust Assets shall automatically vest in the Liquidating Trust free and clear of all Claims, liens, encumbrances, or interests subject only to the Liquidating Trust Interests and the Liquidating Trust Expenses, as provided for in the Plan and the Liquidating Trust Agreement, and Claims required to be paid by the Liquidating Trust pursuant to the Plan with priority over General Unsecured Claims, including, without limitation, Administrative Expense Claims and Professional Fee Claims; and such transfer shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code § 1123(b)(3)(B).

All Retained Causes of Action are expressly preserved for the Liquidating Trustee to pursue for the benefit of the Estate in order to maximize recoveries to Claims Holders in accordance with the Bankruptcy Code's priority scheme.

The Liquidating Trust shall be governed by the Liquidating Trust Agreement and administered by the Liquidating Trustee. The powers, rights, and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in Article VI of this Plan. The Liquidating Trust shall hold and distribute the Liquidating Trust Assets in accordance with the provisions of the Plan and the Liquidating Trust Agreement. Other rights and duties of the Liquidating Trustee and the Beneficiaries shall be as set forth in the Liquidating Trust Agreement. For the avoidance of doubt, after the Effective Date, Debtor and the Estate shall have no interest in the Liquidating Trust Assets, the transfer of the Liquidating Trust Assets to the Liquidating Trust is absolute, and the Liquidating Trust Assets shall not be held or deemed to be held in trust by the Liquidating Trustee on behalf of any of the Debtor or the Estate.

### B. Purpose of the Liquidating Trust

The Liquidating Trust shall be established for the purpose of: (i) pursuing or liquidating the Liquidating Trust Assets in order to provide for distributions to Creditors; (ii) reconciling, resolving, and objecting to Claims, as provided for in the Plan; and (iii)

making Distributions to the Beneficiaries in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

### C. Liquidating Trustee and Liquidating Trust Agreement

The Liquidating Trust Agreement generally will provide for, among other things: (i) the payment of the Liquidating Trust Expenses; (ii) the payment of other reasonable expenses of the Liquidating Trust; (iii) the retention of counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation; (iv) the costs and expenses associated with enforcing the terms of the Plan and the Liquidating Trust, including the payment of legal expenses or indemnification of the Exculpated Parties in the event litigation is commenced or continued against them despite the injunctions imposed by this Plan; (v) the investment of Cash by the Liquidating Trustee within certain limitations, including those specified in the Plan; (vi) the orderly liquidation of the Liquidating Trust Assets; (vii) litigation of any Retained Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Retained Causes of Action for the sole benefit of the Holders of Allowed General Unsecured Claims under Class 4 and 5 of the Plan; (viii) the prosecution and resolution of Objections to Claims; and (ix) the establishment of such Disputed Claim reserves as the Liquidating Trustee deems appropriate.

The Liquidating Trustee, on behalf of the Liquidating Trust, may employ, without further order of the Bankruptcy Court, professionals (including those Professionals previously retained in these Chapter 11 Cases) to assist in carrying out the Liquidating Trustee's duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement. However, the Liquidating Trustee and any professionals employed by the Liquidating Trust shall file a notice with the Bankruptcy Court disclosing the amount of compensation to be sought with an opportunity for parties to file objection before the compensation is paid.

The Liquidating Trust Agreement provides that the Liquidating Trustee shall be indemnified by and receive reimbursement from the Liquidating Trust Assets against and from any and all loss, liability, expense (including reasonable attorneys' fees), or damage which the Liquidating Trustee incurs or sustains, in good faith and without either willful misconduct, gross negligence or fraud, acting as Liquidating Trustee under or in connection with the Liquidating Trust Agreement.

On and after the Effective Date, the Liquidating Trustee shall have the power and responsibility to do all acts contemplated by the Plan to be done by the Liquidating Trustee and all other acts that may be necessary or appropriate in connection with the disposition of the Liquidating Trust Assets and the distribution of the proceeds thereof, as contemplated by the Plan and in accordance with the Liquidating Trust Agreement. In all circumstances, the Liquidating Trustee shall act in its reasonable discretion in the best interests of the Beneficiaries pursuant to the terms of the Plan and the Liquidating Trust Agreement.

### D. Compensation and Duties of Liquidating Trustee

The salient terms of the Liquidating Trustee's employment, including the Liquidating Trustee's duties and compensation, shall be set forth in the Liquidating Trust Agreement. The Liquidating Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases. The Liquidating Trustee shall also be reimbursed for all documented, actual, reasonable, and necessary out-of-pocket expenses incurred in the performance of his or her duties under the Liquidating Trust Agreement.

### E. Retention of Professionals

On the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust, shall be allowed, without further order of the Bankruptcy Court, to employ and compensate professionals, including, but not limited to, counsel, expert witnesses, accountants, appraisers, consultants, and financial advisors, as needed to assist it in fulfilling its obligations under the Plan, and on whatever fee arrangement it deems appropriate, including, without limitation, hourly fee arrangements and contingency fee arrangements. Professionals engaged by the Liquidating Trustee after the Effective Date shall not be required to file applications for compensation in order to receive the compensation provided for herein. However, any professionals employed by the Liquidating Trust shall file a notice with the Bankruptcy Court disclosing the amount of compensation to be sought with an opportunity for parties to file objection before the compensation is paid. If the Liquidating Trustee has any objection to an application for compensation submitted to it by a Professional, the Liquidating Trustee and the Professional which has submitted the application may file a motion with the Bankruptcy Court to decide the matter.

### F. United States Federal Income Tax Treatment of the Liquidating Trust, the Debtor, and Holders of Claims

#### 1. General

The following discussion is a summary of certain material U.S. federal income tax consequences of the Disclosure Statement and Plan to the Debtor and to certain Holders (which solely for purposes of this discussion means the beneficial owner for U.S. federal income tax purposes) of Claims. The following summary does not address the U.S. federal income tax consequences to Holders of Claims or Interests not entitled to vote on the Plan. This summary is based on the IRC, Treasury Regulations promulgated and proposed thereunder (the **"Treasury Regulations"**), judicial decisions, and published administrative rules and pronouncements of the IRS, all as in effect on the date hereof and all of which are subject to change or differing interpretations, possibly with retroactive effect. No legal opinions have been requested or obtained from counsel with respect to any of the tax aspects of the Disclosure Statement and Plan and no rulings have been or will be requested from the IRS with respect to any of the issues discussed below. The discussion below is not binding upon the IRS or the courts. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to Debtor or to certain Holders of Claims in light of their individual circumstances,

nor does the discussion deal with tax issues with respect to Holders of Claims subject to special treatment under the U.S. federal income tax laws (including, for example, insurance companies; banks or other financial institutions; brokers, dealers, or traders in securities; real estate investment trusts; governmental authorities or agencies; tax-exempt organizations; retirement plans; individual retirement or other tax-deferred accounts; certain expatriates or former long-term residents of the United States; small business investment companies; regulated investment companies; S corporations, partnerships, or other pass-through entities for U.S. federal income tax purposes and their owners; persons whose functional currency is not the U.S. dollar; persons who use a mark-to-market method of accounting; persons required to report income on an applicable financial statement; persons holding Claims as part of a straddle, hedge, constructive sale, conversion transaction, or other integrated transaction; and persons who are not U.S. Holders (as defined below)). Furthermore, this discussion assumes that a Holder of a Claim holds such claim as a "capital asset" within the meaning of Section 1221 of the IRC (generally property held for investment). This discussion does not address any U.S. federal non-income (including estate or gift), state, local, or foreign taxation, alternative minimum tax, or the Medicare tax on certain net investment income.

For purposes of this discussion, a "U.S. Holder" is a beneficial owner of a Claim that is, for U.S. federal income tax purposes:

- An individual citizen or resident of the United States;

- A corporation, or other entity taxable as a corporation, created or organized in or under the laws of the United States, any state therein or the District of Columbia;

- An estate, the income of which is subject to U.S. federal income taxation regardless of its source; or

- A trust if a court within the United States is able to exercise primary supervision over its administration and one or more United States persons have the authority to control all substantial decisions of the trust or otherwise if the trust has a valid election in effect under current Treasury regulations to be treated as a United States person.

If a partnership (or other entity or arrangement classified as a partnership for U.S. federal income tax purposes) is a Holder of Claims, the U.S. federal income tax treatment of a partner in the partnership will generally depend on the status of the partner and the activities of the partnership. A Holder of a Claim that is a partnership and the partners in such partnership should consult their tax advisors with regard to the U.S. federal income tax consequences of the Disclosure Statement and Plan.

**THE FOLLOWING SUMMARY IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM IS URGED TO CONSULT WITH SUCH HOLDER’S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THE PLAN.**

### 2. Liquidating Trust

The Debtor is a pass through entity. It is not expected that the Debtor will owe any federal tax liability and the Debtor will not itself incur federal capital gains tax as a result of the sale, although obligations may be incurred on the state (District) level. As of the Effective Date, the Liquidating Trust will be established for the benefit of the Holders of certain Allowed Claims. The tax consequences of the Plan in relation to the Liquidating Trust and the Beneficiaries thereof are subject to uncertainties due to the complexity of the Plan and the lack of interpretative authority regarding certain changes in the tax law.

Allocations of taxable income of the Liquidating Trust (other than taxable income allocable to the Liquidating Trust's claims reserves) among Holders of Claims will be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its assets (valued at their tax book value) to the Holders of the beneficial interests in the Liquidating Trust, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating Distribution of the remaining trust assets.

The tax book value of the trust assets for this purpose will equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements. Uncertainties with regard to federal income tax consequences of the Plan may arise due to the inherent nature of estimates of value that will impact tax liability determinations.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an IRS private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee may (a) elect to treat any trust assets allocable to, or retained on account of a reserve for disputed Claims as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. Accordingly, any disputed Claims reserve may be subject to tax annually on a separate entity basis on any net income earned with respect to the Liquidating Trust assets in such reserves, and all Distributions from such reserves will be treated as received by Holders in respect of their Claims as if distributed by Debtor. All parties (including, without limitation, Debtor, the Liquidating Trustee, and the Holders of beneficial interests in the Liquidating Trust) will be required to report for tax purposes consistently with the foregoing. Any reserve for disputed Claims established by the Liquidating Trustee will be responsible for payment, out of the assets allocated for disputed Claims, any taxes imposed on the disputed Claims or its assets. In the event, and to the extent, any Cash in any disputed Claims reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of such reserve (including any income that may arise upon the Distribution of the assets in such reserve), assets of the disputed Claims reserve may be used to pay such taxes.

The Liquidating Trust is intended to qualify as a liquidating trust for federal income tax purposes. In general, a liquidating trust is not a separate taxable entity but rather is treated for federal income tax purposes as a "grantor" trust (i.e., a pass-through entity). The IRS, in Revenue Procedure 94–45, 1994.28 I.R.B. 124, sets forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Liquidating Trust has been structured with the intention of complying with such general criteria. Pursuant to the Plan and Liquidating Trust Agreement, and in conformity with Revenue Procedure 94-45, supra, all parties (including the Debtor, the Liquidating Trustee, and the Holders of beneficial interests in the Liquidating Trust) are required to treat for federal income tax purposes, the Liquidating Trust as a grantor trust of which the Holders of the applicable Allowed Claims are the owners and grantors, and treat the Holders of interests in the Liquidating Trust as the direct owners of an undivided interest in the Liquidating Trust Assets (other than any assets allocable to Disputed Claims), consistent with their economic interests therein. While the following discussion assumes that the Liquidating Trust would be so treated for federal income tax purposes, no ruling has been requested from the IRS concerning the tax status of the Liquidating Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust as a grantor trust. If the IRS were to successfully challenge such classification, the federal income tax consequences to the Liquidating Trust and the Beneficiaries thereof could materially vary from those discussed herein.

In general, each Creditor who is a Beneficiary of the Liquidating Trust will recognize gain or loss on the Effective Date in an amount equal to the difference between (i) the "amount realized" by such Beneficiary in satisfaction of its applicable Allowed Claim, and (ii) such Beneficiary's adjusted tax basis in such Claim. The "amount realized" by a Beneficiary will equal the sum of Cash and the aggregate fair market value of the property received by such party pursuant to the Plan (such as a Beneficiary's undivided beneficial interest in the assets transferred to the Liquidating Trust). Where gain or loss is recognized by a Beneficiary in respect of its Allowed Claim, the character of such gain or loss (i.e., long-term or short-term capital, or ordinary income) will be determined by a number of factors including the tax status of the party, whether the Claim constituted a capital asset in the hands of the party and how long it had been held, whether the Claim was originally issued at a discount or acquired at a market discount and whether and to what extent the party had previously claimed a bad debt deduction in respect of the Claim.

After the Effective Date, any amount that a Creditor receives as a Distribution from the Liquidating Trust in respect of its beneficial interest in the Liquidating Trust should not be included, for federal income tax purposes, in the Creditor's amount realized in respect of its Allowed Claim but should be separately treated as a Distribution received in respect of such party's beneficial interest in the Liquidating Trust.

In general, a Beneficiary's aggregate tax basis in its undivided beneficial interest in the assets transferred to the Liquidating Trust will equal the fair market value of such undivided beneficial interest as of the Effective Date and the Beneficiary's holding period in such assets will begin the day following the Effective Date. Distributions to any Beneficiary will be allocated first to the original principal portion of the Beneficiary's Allowed Claim as determined for federal tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim. However, there is no assurance that the IRS will respect such allocation for federal income tax purposes.

For all federal income tax purposes, all parties (including the Debtor, the Liquidating Trustee, and the Holders of beneficial interests in the Liquidating Trust) will treat the transfer of assets to the Liquidating Trust, in accordance with the terms of the Plan and Liquidating Trust Agreement, as a transfer of those assets directly to the Holders of the applicable Allowed Claims followed by the transfer of such assets by such Holders to the Liquidating Trust. Consistent therewith, all parties will treat the Liquidating Trust as a grantor trust of which such Holders are to be owners and grantors. Thus, such Holders (and any subsequent Holders of interests in the Liquidating Trust) will be treated as the direct owners of an undivided beneficial interest in the assets of the Liquidating Trust for all federal income tax purposes. Accordingly, each Holder of a beneficial interest in the Liquidating Trust will be required to report on its federal income tax return(s) the Holder's allocable share of all income, gain, loss, deduction or credit recognized or incurred by the Liquidating Trust.

The Liquidating Trust's taxable income will be allocated to the Holders of beneficial interests in the Liquidating Trust in accordance with each such Holder's *pro rata* share pursuant to Article VII of the Plan. The character of items of income, deduction and credit to any holder and the ability of such Holder to benefit from any deductions or losses may depend on the particular situation of such Holder.

The federal income tax reporting obligation of a Holder of a beneficial interest in the Liquidating Trust is not dependent upon the Liquidating Trust distributing any Cash or other proceeds. Therefore, a Holder of a beneficial interest in the Liquidating Trust may incur a federal income tax liability regardless of the fact that the Liquidating Trust has not made, or will not make, any concurrent or subsequent Distributions to the Holder. If a Holder incurs a federal tax liability but does not receive Distributions commensurate with the taxable income allocated to it in respect of its beneficial interests in the Liquidating Trust it holds, the Holder may be allowed a subsequent or offsetting loss. In general, other than in respect of Cash retained on account of Disputed Claims and Distributions resulting from undeliverable Distributions (the subsequent Distribution of which still relates to a Holder's Claim), a Distribution of Cash by the Liquidating Trust will not be separately taxable to a Holder of interests in the Liquidating Trust since the Beneficiary is already regarded for U.S. federal income tax purposes as owning the underlying assets (and was taxed at the time the Cash was earned or received by the Liquidating Trust). Holders are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of any subsequent distributions of Cash originally retained by the Liquidating Trust on account of Disputed Claims.

The Liquidating Trustee will file with the IRS returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a). The Liquidating Trust will also send to each Holder of a beneficial interest in the Liquidating Trust a separate statement setting forth the Holder's share of items of income, gain, loss, deduction or credit and will instruct the Holder to report such items on its federal income tax return.

Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, could also change the federal income tax consequences of the Plan and the transactions contemplated thereunder.

### 3. <u>Tax Consequences for U.S. Holders of Certain Claims</u>

Generally, a Holder of a Claim should in most, but not all, circumstances recognize gain or loss on the Effective Date equal to the difference between the "amount realized" by such Holder in exchange for its Claim and such Holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the Cash and the fair market value of any other consideration received under the Plan in respect of a Holder's Claim. The tax basis of a Holder in a Claim will generally be equal to the Holder's cost therefor (subject to the below discussion regarding original issue discount ("<u>OID</u>")). To the extent applicable, the character of any recognized gain or loss (e.g., ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the Holder, the nature of the Claim in the Holder's hands, the purpose and circumstances of its acquisition, the Holder's holding period of the Claim, and the extent to which the Holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. Generally, if the Claim is a capital asset in the Holder's hands, any gain or loss realized will generally be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the Holder has held such Claim for more than one year.

A Creditor who receives Cash in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest or OID. A Creditor who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a Distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for U.S. federal income tax purposes as interest, regardless of whether such Creditor realizes an overall gain or loss as a result of surrendering its Claim. A Creditor who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such Creditor realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim. As set forth in Section VI.F.2 , above, Distributions under this Plan with respect to a Claim will be allocated first to the principal portion of such Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Claim, if any. However, there is no assurance that such allocation would be respected by the IRS for U.S. federal income tax purposes.

Under the "market discount" provisions of the IRC, some or all of any gain realized by a U.S. Holder of a Claim who exchanges the Claim for an amount may be treated as ordinary income (instead of capital gain), to the extent of the amount of "market discount" on the debt instruments constituting the exchanged Claim. In general, a debt instrument is considered to have been acquired with "market discount" if it is acquired other than on original issue and if its U.S. Holder's adjusted tax basis in the debt instrument is less than (a) the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest" or (b) in the case of a debt instrument issued with original issue discount, its adjusted issue price, in each case, by at least a *de minimis* amount (equal to 0.25% of the sum of all remaining payments to be made on the debt instrument, excluding qualified stated interest, multiplied by the number of remaining whole years to maturity). Any gain recognized by a U.S. Holder on the taxable disposition of Allowed Claims (determined as described above) that were acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while the Allowed

Claims were considered to be held by the U.S. Holder (unless the U.S. Holder elected to include market discount in income as it accrued).

Under the Plan, a portion of the payment received by Holders of Allowed Claims may be attributable to accrued interest or OID on such Claims. Such amount should be taxable to that U.S. Holder as interest income if such accrued interest or OID has not been previously included in the Holder's gross income for United States federal income tax purposes. Conversely, U.S. Holders of Claims may be able to recognize a deductible loss to the extent any accrued interest or OID on the Claims was previously included in the U.S. Holder's gross income but was not paid in full by the Debtor. If the payment does not fully satisfy all principal and interest or OID on Allowed Claims, the extent to which payment will be attributable to accrued interest or OID is unclear. Whether the applicable Holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the Holder and its Claims. Creditors should consult their own tax advisors.

### 4. Information Reporting and Withholding

In connection with the Disclosure Statement and Plan, the Debtor and the Liquidating Trustee will comply with all applicable withholding and information reporting requirements imposed by U.S. federal, state, local, and foreign taxing authorities, and all Distributions under the Plan will be subject to those withholding and information reporting requirements. Holders of Claims may be required to provide certain tax information as a condition to receiving Distributions pursuant to the Plan. In the case of any non-U.S. Holders, the Liquidating Trustee may be required to withhold up to 30% of the income or proceeds allocable to such persons, depending on the circumstances (including whether the type of income is subject to a lower treaty rate or is otherwise excluded from withholding). As indicated above, the foregoing discussion of the U.S. federal income tax consequences of the Plan does not generally address the consequences to non-U.S. Holders. Accordingly, such Holders should consult their tax advisors with respect to the U.S. federal income tax consequences of the Plan, including owning an interest in the Liquidating Trust.

In general, information reporting requirements may apply to Distributions pursuant to the Plan. Additionally, under the backup withholding rules, a Holder may be subject to backup withholding with respect to Distributions made pursuant to the Plan, unless a U.S. Holder provides the applicable withholding agent with a taxpayer identification number, certified under penalties of perjury, as well as certain other information, or otherwise establish an exemption from backup withholding. Backup withholding is not an additional tax. Any amounts withheld under the backup withholding rules will be allowed as a credit against a U.S. Holder's U.S. federal income tax liability, if any, and may entitle a U.S. Holder to a refund, provided the required information is timely furnished to the IRS.

In addition, from an information reporting perspective, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders of Claims or Interests are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Disclosure Statement and Plan would be subject to these regulations and require disclosure on the Holder's tax returns.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM OR INTEREST IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THE PLAN.**

### G. Abandonment, Disposal, and Destruction of Records

The Liquidating Trustee shall be authorized pursuant to Bankruptcy Code§ 554, in its sole discretion, without any further notice to any party or action, order or approval of the Bankruptcy Court, to abandon, dispose of, or destroy in any commercially reasonable manner all originals and/or copies of any documents, books and records, including any electronic records, of the Debtor that are transferred to the Liquidating Trust and which the Liquidating Trustee reasonably concludes are burdensome or of inconsequential value and benefit to the Liquidating Trust.

### H. Distributions by Liquidating Trustee

Following the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trustee shall make continuing efforts to liquidate all Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement, *provided* that the timing of all Distributions made by the Liquidating Trustee to Beneficiaries shall be at the discretion of the Liquidating Trustee, and, *provided, further,* that Distributions to Beneficiaries may only be made after the final Administrative Expense Claims Bar Date. All Distributions made by the Liquidating Trustee, other than distributions made for the payment of trust expenses, will be made pro-rata to Holders of unsatisfied claims in accordance with the priority scheme established by the Bankruptcy Code and as set out in this Plan.

### I. Cash Investments

Funds in the Liquidating Trust shall be invested in demand and time deposits in banks or other savings institutions, or in other temporary, liquid investments, such as Treasury bills, consistent with the liquidity needs of the Liquidating Trust as determined by the Liquidating Trustee, in accordance with Bankruptcy Code § 345, unless the Bankruptcy Court otherwise requires; *provided, however,* that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

### J. Dissolution of the Liquidating Trust

The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as: (a) (i) all Disputed Claims have been resolved; (ii) all of the Liquidating Trust Assets have been liquidated; (iii) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement have been fulfilled; (iv) all Distributions required under the Plan and the Liquidating Trust Agreement have been made; and (v) the Bankruptcy Case has been closed, or (b) as otherwise provided in the Liquidating Trust Agreement. Upon dissolution of the

Liquidating Trust, any remaining Liquidating Trust Assets may be transferred by the Liquidating Trustee to a charitable organization(s).

### K. Control Provisions

To the extent there is any inconsistency between the Disclosure Statement and Plan as it relates to the Liquidating Trust and the Liquidating Trust Agreement, the terms of the Disclosure Statement and Plan shall control.

### L. Limitation of Liability; Indemnification

The Liquidating Trustee and all of its respective designees, employees, agents, representatives or professionals shall not be liable for the act or omission of any other member, designee, agent or representative of the Liquidating Trustee, nor shall they be liable for any act or omission taken or omitted to be taken in their respective capacities, other than acts or omission resulting from willful misconduct, gross negligence, or fraud. The Liquidating Trustee shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee. The Liquidating Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, which consultation may act as a defense for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons. Notwithstanding such authority, the Liquidating Trustee shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and its designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect to or related to the performance of their duties or the implementation or administration of the Plan; *provided*, *however*, that no such indemnification will be made to such persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

### M. Corporate Action

On the Effective Date, all matters expressly provided for under this Plan that would otherwise require approval of the equity holders or directors of the Debtor, including but not limited to, the dissolution or merger of any of the Debtor, shall be deemed to have occurred and shall be in effect upon the Effective Date pursuant to the applicable general corporation law of the states in which the Debtor is incorporated without any requirement of action by the equity holders or directors of the Debtor.

## VII. PROVISIONS GOVERNING DISTRIBUTIONS

### A. Distributions for Allowed Claims

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Beneficiaries as of the applicable Distribution Date shall be made on or as soon

as practicable after the applicable Distribution Date. Distributions on account of Claims that first become Allowed Claims after the applicable distribution date shall be made pursuant to the terms of this Plan and on the day selected by the Liquidating Trustee.

The Liquidating Trustee may accelerate any Distribution date with respect to Distributions other than the initial Distribution Date if the facts and circumstances so warrant and to the extent not inconsistent with the Plan.

Distributions made as soon as reasonably practicable after the Effective Date or such other date set forth herein shall be deemed to have been made on such date**.**

### B. Interest of Claims

Expect to the extent provided in Bankruptcy Code § 506(b), the Plan, or the Confirmation Order, Post-Petition interest shall not accrue or be paid on Claims, and no Holder of an Allowed Claim shall be entitled to interest accruing on any Claim from and after the Petition Date.

### C. Distributions by Liquidating Trustee as Disbursement Agent

From and after the Effective Date, the Liquidating Trustee shall serve as the Disbursing Agent under the Plan with respect to Distributions to Holders of Allowed Claims (provided that the Liquidating Trustee may hire professionals or consultants to assist with making disbursements or to act as the Disbursing Agent). The Liquidating Trustee shall cause to be made all Distributions required to be made to such Holders of Allowed Claims pursuant to the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of the Liquidating Trustee's duties as Disbursing Agent unless otherwise ordered by the Bankruptcy Court.

### D. Means of Cash Payment

Cash payments under the Plan shall be made, at the option, and in the sole discretion, of the Liquidating Trustee, by wire, check, or such other method as the Liquidating Trustee deems appropriate under the circumstances. Cash payments to foreign Creditors may be made, at the option, and in the sole discretion, of the Liquidating Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Pursuant to Section VII.G of the Plan, Cash payments in the form of checks issued by the Liquidating Trustee shall be null and void if not cashed within ninety (90) days of the date of the issuance thereof and deemed undeliverable Distributions. Following the expiration of ninety (90) days after issuance of such null and void checks, in accordance with Section VII.M of the Plan, amounts in respect of these undeliverable Distributions shall become unrestricted Liquidating Trust Assets redistributed to the Beneficiaries after reserving as necessary for payment of Liquidating Trust Expenses**.** Such Holder shall be deemed to have forfeited its right to any reserved and future Distributions from the Liquidating Trust and any Liquidating Trust Interests held by such Holder shall be deemed cancelled, and the Claims of such Holder shall be forever barred.

For purposes of effectuating Distributions under the Plan, any Claim denominated in foreign currency shall be converted to U.S. Dollars pursuant to the applicable published exchange rate in effect on the Petition Date.

**E. Fractional Distributions**

Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**F. De Minimis Distributions**

Notwithstanding anything to the contrary contained in the Plan, the Liquidating Trustee shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim is less than $100. Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than $100 shall be forever barred from asserting such Claim against Liquidating Trust Assets.

**G. Delivery of Distributions; Unclaimed Distributions**

All Distributions to Holders of Allowed Claims shall be made at the address of such Holder as set forth in the claims register maintained in the Chapter 11 Cases (subject to any transfer effectuated pursuant to Bankruptcy Rule 3001(e) or, after the Effective Date, a change of address notification provided by a Holder in a manner reasonably acceptable to the Liquidating Trustee) or, in the absence of a filed proof of Claim, the Schedules. The responsibility to provide the Liquidating Trustee a current address of a Holder of Claims shall always be the responsibility of such Holder and at no time shall the Liquidating Trustee have any obligation to determine a Holder's current address. Nothing contained in the Plan shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim. Amounts in respect of undeliverable Distributions made by the Liquidating Trustee shall be held in trust on behalf of the Holder of the Claim to which they are payable by the Liquidating Trust until the earlier of the date that such undeliverable Distributions are claimed by such Holder and the date ninety (90) days after the date the undeliverable Distributions were made. Following the expiration of ninety (90) days after the date the undeliverable Distributions were made, the amounts in respect of undeliverable Distributions shall be become unrestricted Liquidating Trust Assets redistributed to the Beneficiaries after reserving as necessary for payment of Liquidating Trust Expenses. Such Holder shall be deemed to have forfeited its right to any reserved and future Distributions from the Liquidating Trust and any Liquidating Trust Interests held by such Holder shall be deemed cancelled, and the Claims of such Holder shall be forever barred.

**H. Application of Distribution Record Date**

At the close of business on the Distribution Record Date, the Debtor's Claims Register shall be closed, and there shall be no further changes in the record Holders of Claims or Interests, including changes in the identity of the Holder or the amount of the Claim. Beneficial interests in the Liquidating Trust shall be non-transferable except upon death of the interest holder or by operation of law. Except as provided herein, the Liquidating Trustee and the Liquidating Trustee's respective agents, successors, and assigns shall have no obligation to recognize any transfer of any

Claim or Interest occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the Claims Registers as of the close of business on the Distribution Record Date irrespective of the number of Distributions to be made under the Plan to such Entities or the date of such Distributions.

**I. Withholding, Payment and Reporting Requirements With Respect to Distributions**

All Distributions under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements. The Liquidating Trustee may require, in the Liquidating Trustee's sole and absolute discretion and as a condition to the receipt of any Distribution, that the Holder of an Allowed Claim complete and return to the Liquidating Trust the appropriate Form W-8 or Form W-9, as applicable, to each Holder. Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed upon the Liquidating Trust in connection with such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the Liquidating Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Liquidating Trust in connection with such Distribution.

**J. Setoffs**

The Liquidating Trust may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or the Liquidating Trust may have against the Holder of such Claim; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trust of any such claim that it may have against such Holder.

**K. No Distribution in Excess of Allowed Amounts**

Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution of a value as of the Effective Date in excess of the Allowed amount of such Claim. Nothing in this Section should be construed as prohibit parties from seeking recovery or asserting claims against non-debtor third parties in an appropriate forum.

**L. Allocation of Distributions**

The Liquidating Trustee may, upon the filing of a motion and obtaining approval of the Bankruptcy Court, in the Liquidating Trustee's discretion, make Distributions jointly to any

Holder of a Claim and any other Entity who has asserted, or whom the Liquidating Trustee has determined to have, an interest in such Claim; *provided*, *however*, that the Liquidating Trust shall provide notice of such Distribution to any Holder of a Claim or other Entity that has asserted an interest in such Claim.

### M. <u>Forfeiture of Distributions</u>

If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Section VII.D, fails to claim an undeliverable Distribution within the time limit set forth in Section VII.G, or fails to complete and return to the Liquidating Trust the appropriate Form W-8 or Form W-9 within one hundred twenty (120) days of the request by the Liquidating Trust for the completion and return to it of the appropriate form pursuant to Section VII.I, then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions from the Liquidating Trust and any Liquidating Trust Interests held by such Holder shall be deemed cancelled, and the Claims of such Holder shall be forever barred. The forfeited Distributions shall become unrestricted Liquidating Trust Assets and shall be redistributed to the Beneficiaries after reserving as necessary for payment of Liquidating Trust Expenses and otherwise in compliance with the Plan and the Liquidating Trust Agreement. In the event the Liquidating Trustee determines, in the Liquidating Trustee's sole discretion, that any such amounts are too small in total to redistribute cost-effectively to the Beneficiaries, the Liquidating Trustee may instead donate them to a charitable organization(s) free of any restrictions thereon, notwithstanding any federal or state escheat laws to the contrary.

## VIII. <u>PROVISIONS FOR CLAIM OBJECTIONS AND ESTIMATION OF CLAIMS</u>

### A. <u>Claims Administration Responsibility</u>

Except as otherwise specifically provided in the Plan and the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trustee shall have authority, on behalf of the Estate after providing notice on the docket, (a) to File, withdraw, or litigate to judgment Objections to Claims, (b) to settle, compromise, or Allow any Claim or Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, (c) to amend the Schedules in accordance with the Bankruptcy Code, and (d) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. Any agreement entered into by the Liquidating Trustee (acting in accordance with the terms of the Liquidating Trust Agreement) with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim. Notwithstanding the foregoing, to the extent any party objects to the proposed treatment of its claim by the Liquidating Trustee, all such parties shall have the right to file a timely objection and seek a determination from the Bankruptcy Court.

### B. <u>Claims Objections</u>

All Objections to Claims shall be filed by the Liquidating Trustee on or before the Claim Objection Deadline, which date may be extended by the Bankruptcy Court upon a motion filed by the Liquidating Trustee on or before the Claim Objection Deadline with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 as of the filing of such

motion. If a timely Objection has not been filed to a proof of Claim or the Schedules have not been amended with respect to a Claim that was scheduled by the Debtor but was not set forth in the Schedules by the Debtor as contingent, unliquidated, and/or as a Disputed Claim, then the Claim to which the proof of Claim or the Claim set forth in the Schedules relates will be treated as an Allowed Claim.

### C. <u>Estimation of Contingent or Unliquidated Claims</u>

The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code § 502(c), regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such Objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any Objection to any Claim, including during the pendency of any appeal relating to any such Objection. In the event the Bankruptcy Court so estimates any contingent or unliquidated Claim, that estimated amount shall constitute the Allowed amount of such Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.

### D. <u>Distributions on Account of Disputed Claims</u>

Distributions may be made on account of an undisputed portion of a Disputed Claim. The Liquidating Trustee shall, on the applicable distribution date, make Distributions on account of any Disputed Claim (or portion thereof) that has become an Allowed Claim. Such Distributions shall be based upon the Distributions that would have been made to the Holder of such Claim under the Plan if such Claim had been an Allowed Claim on the Effective Date in the amount ultimately Allowed.

### E. <u>Amendments to Claims</u>

On or after the Effective Date, a Claim may not be filed or amended to increase liability or to assert new liabilities without the prior authorization of the Bankruptcy Court or the Liquidating Trustee and any such new or amended Claim filed without prior authorization shall be deemed Disallowed in full without any further action.

### F. <u>Adjustment to Claims Without Objection</u>

Any Claim that has been paid or otherwise satisfied may be designated on the docket for the Bankruptcy Case as such at the direction of the Liquidating Trustee by the filing of a Notice of Satisfaction by the Liquidating Trustee, and without any further notice to or action, order, or approval of the Bankruptcy Court.

### G. <u>Special Provision Concerning Class 5 Claims</u>

In order to avoid duplicative recoveries, the Liquidating Trustee will coordinate with any claims process maintained by the District of Columbia with respect to C.P.P.A./Housing Claims. The District of Columbia has advised the Debtor that the District has never allowed a double recovery in any of its housing matters for rent restitution claims. If the District is awarded restitution through the District C.P.P.A/Housing Claims, it anticipates it will distribute those funds

through a third party claims administrator. Restitution paid by the claims administrator would be based on the amount of rent tenants have paid, which is derived from tenant rent ledgers, which the District of Columbia generally seeks from the landlord.

To the extent any distributions are made by the Bankruptcy Estate or the Liquidating Trustee, the Liquidating Trustee will inform the District of Columbia and any claim administrator of the payments. To the extent rent restitution payments are made directly to any tenant by the Bankruptcy Estate or Liquidating Trustee, those payments for rent restitution will be deducted by the claims administer so as to avoid double recovery by tenants. The District of Columbia has also represented that the claim administrator will also deduct any payments made directly to tenants as a result of any proceeding at the District of Columbia Office of Administrative Hearings.

## IX. CONFIRMATION AND CONSUMATION OF THE PLAN

### A. Conditions to Confirmation

The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in writing in accordance with Section IX.D:

1. An order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code § 1125, or an order dispensing with the need for approval of the Disclosure Statement shall have been entered by the Bankruptcy Court; and

2. A Confirmation Order in form and substance, reasonably acceptable to the Debtor shall have been entered by the Bankruptcy Court.

### B. Conditions Precedent to the Effective Date

Each of the following is a condition precedent to the occurrence of the Effective Date:

(a) The Confirmation Order shall have been entered by the Bankruptcy Court;

(b) The closing of the Sale of the Property;

(c) The Liquidating Trust Agreement shall have been executed;

(d) The Liquidating Trust shall have been established and the Liquidating Trust Assets shall have been transferred to and vested in the Liquidating Trust free and clear of all Claims and Interests, except as specifically provided in the Plan and the Liquidating Trust Agreement.

### C. Notice of Effective Date

On or before five (5) Business Days after the Effective Date, the Liquidating Trustee shall mail or cause to be mailed to all Holders of Claims a notice that informs such Entities of (a) the occurrence of the Effective Date, (b) notice of the final Administrative Expense Claims Bar Date

and Professional Fee Claim Bar Date, and (c) such other matters as the Liquidating Trustee deems appropriate or as may be ordered by the Bankruptcy Court.

### D. Waiver of Conditions Precedent to the Effective Date

The Debtor may at any time, without notice or authorization of the Bankruptcy Court, waive in writing any or all of the conditions precedent to the Effective Date set forth in this Article, other than the requirement of the entry of a Confirmation Order by the Bankruptcy Court. The Debtor reserves the right to assert that any appeal from the Confirmation Order shall be moot after the Effective Date of the Plan.

### E. Effect of Non-Occurrence of Effective Date

In the event that the Effective Date does not timely occur, the Debtor reserves all rights to seek orders from the Bankruptcy Court directing that the Confirmation Order be vacated, that the Plan be null and void in all respects, and/or that any settlement of Claims provided for in the Plan be null and void. Notwithstanding the forgoing, the portion of the Confirmation Order approving any sale of the Property will remain effective. In the event that the Bankruptcy Court shall enter an order vacating the Confirmation Order, the time within which the Debtor may assume and assign or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions.

## X. EFFECTS OF CONFIRMATION

### A. Limitation of Liability in Connection with the Case, the Plan, Disclosure Statement and Related Documents

Pursuant to § 1125(e) of the Bankruptcy Code, the Debtor and its Professionals, representatives, successors, and assigns (collectively, the "Plan Participants") will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Plan, including, but not limited to, the formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement, pleading or document created or entered into in connection with or for the purpose of carrying out the Plan, the Disclosure Statement, the Confirmation Order or related agreement, including solicitation of acceptances of the Plan ("Exculpated Conduct"); *provided*, *however*, that no Person shall be relieved of liability for fraud, gross negligence, intentional misconduct or the willful violation of federal or state securities laws or the Internal Revenue Code.

### B. Non-Discharge of the Debtor; Injunction

In accordance with Bankruptcy Code § 1141(d)(3), the Plan does not discharge the Debtor. Bankruptcy Code § 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against Debtor. As such, no Entity holding a Claim against Debtor may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan. All parties are precluded from asserting against any property to be distributed under the

Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, from:

(a) commencing or continuing in any manner any action or other proceeding of any kind against the Estate, the Liquidating Trust, their successors and assigns, and any of their assets and properties;

(b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Estate, the Liquidating Trust, their successors and assigns, and any of their assets and properties;

(c) creating, perfecting or enforcing any encumbrance of any kind against any Estate, the Liquidating Trust, their successors and assigns, and any of their assets and properties;

(d) asserting any right of setoff or subrogation of any kind against any obligation due from any Estate, the Liquidating Trust or their successors and assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed proof of Claim or tenant defenses with respect to any landlord tenant actions; or

(e) commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Interest or Cause of Action against the Exculpated Parties to the extent the action relates to items within the scope of the exculpation provisions contained in Section X.C.

Any Entity injured by any willful violation of such injunction may seek actual damages and, in appropriate circumstances, may seek punitive damages from the willful violator. Notwithstanding the foregoing, in the event of any landlord tenant action, tenants will retain their rights to assert defenses available under the assigned leases.

## C. <u>Exculpation</u>

The exculpation and injunctions provided for in this Section shall be effective upon the entry of the Confirmation Order.

### 1. <u>Exculpation</u>

Notwithstanding any other provision of the Plan, the Estate, the Debtor, any officer or manager, of the Debtor, the Professionals, or those parties' representatives, successors, and assigns shall not have or incur any liability to, or be subject to any right of action by, any Holder of a Claim or an interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or any of their

successors or assigns, for any act or omission relating to, or arising from (i) the decision to file the Bankruptcy Case or post-petition actions taken with respect to the Bankruptcy Case, (ii) formulating, negotiating or implementing the Disclosure Statement and Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Bankruptcy Case, the Disclosure Statement, or the Plan; (iii) the Sale; (iv) any other act taken or omitted to be taken in connection with or in contemplation of Sale, the Plan, or the liquidation of the Debtor prior to the Effective Date of the Plan; (v) the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the Consummation of the Plan or (vi) the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or willful misconduct as determined by a Final Order, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting the Exculpated Parties from liability. The Confirmation Order shall provide that Exculpated Parties may assert the exculpation as a defense if any Entity seeks to bring a claim against an Exculpated Party and may seek such further relief as may be necessary from this Court to enforce the Exculpation Provision if such a claim is raised.

The Exculpation Provisions are an integral part of the Plan and are essential to the Plan's consummation and implementation. In a successful action to enforce the release provisions of this Section in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing. However, nothing in this paragraph will require a Court to issue costs or attorney's fees or otherwise limit the equitable discretion of the Court to fashion a remedy appropriate under the circumstance to enforce the Exculpation Provisions of the Plan.

For the avoidance of doubt and notwithstanding anything else in the Plan, this Confirmation Order, or any implementing or supplementing Plan supplement, the United States of America is not providing and shall not be deemed to have provided any release or exculpation of any released parties or the Exculpated Parties under Section X.C.1 of the Plan.

## XI. OTHER PLAN PROVISIONS

### A. Executory Contracts and Unexpired Leases

#### 1. Assumption/Rejection of Executory Contracts and Unexpired Leases

Pursuant to § 365 of the Bankruptcy Code, the Debtor seeks to assume and assign certain Leases and Executory Contracts to the Buyer, specifically including the leases of the tenants living in the Marbury Plaza Apartments on the Property (the "Tenant Leases") upon successful closing of sale of the Property. On June 3, 2024, the Debtor filed six omnibus motions to assume and assign the Tenant Leases in connection with the proposed sale of the Property (collectively, the "Tenant Assumption Motions"). The Tenant Assumption Motions proposed cure amounts with respect to the assumption and assignment of each of the Tenant Leases. Final cure amounts and authorization to assume and assign the Tenant Leases pursuant § 365 of the Bankruptcy Code are to be established pursuant to entry of orders on the Tenant Assumption Motions and incorporated

into the Confirmation Order. The Debtor also seeks to assume and assign any associated housing assistance contracts in connection with the assumption of these leases. The Debtor will respond to any information requests from tenants or the Buyer seeking historical information to facilitate any recertification or documentation needed to enable the tenants to continue receiving housing assistance.

The Sale Agreement provides that the Buyer may designate the Debtor's assumption and assignment at Closing to the Buyer of other executory contracts and unexpired leases that it wishes pursuant to § 365 of the Bankruptcy Code. Under the Sale Agreement, the Buyer shall be responsible for paying all amounts necessary to cure any defaults under the such designated assumed contracts under Section 365 of the Bankruptcy Code or other applicable law and for satisfying any requirements regarding adequate assurance of future performance that may be imposed under Section 365(b) of the Bankruptcy Code. Any assumption and assignment of such executory contracts and unexpired leases, cure costs associated with the same, and showing of adequate assurance of future performance under Section 365(b) of the Bankruptcy Code shall be addressed in separate motions filed with the Bankruptcy Court as necessary.

To the extent the Debtor determines appropriate, the Debtor reserves the right to reject any executory contract or unexpired lease until entry of an order by the Bankruptcy Court providing for assumption and assignment. Except as otherwise provided in the Sale Agreement, the Confirmation Order, this Plan, the Assumption Motions, or any other Plan Document, on the Effective Date, the Debtor, or Liquidating Trustee as appropriate, will be deemed to have rejected any and all other Executory Contracts and Leases that the Debtor executed before the Effective Date to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code § 365. On the Effective Date, the Confirmation Order will constitute a Court order approving this rejection pursuant to § 365(a) of the Bankruptcy Code.

### 2. Bar Date for Rejection Damage Claims

Any Rejection Damage Claims arising from the rejection under the Plan of an Executory Contract or Lease must be filed with the Court and served on the Debtor and its counsel within thirty (30) days after the entry of the Notice of the Effective Date of the Plan. Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable and the Persons holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims. The Debtor reserves the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than the Claims Objection Deadline.

## B. Indemnification Obligations

Except as otherwise provided in this Plan or any contract, instrument, release, or other agreement or document entered into in connection with this Plan, any and all indemnification obligations that the Debtor has pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law, shall be rejected as of the Effective Date, to the extent executory. Nothing in this Plan shall be deemed to release the Debtor's insurers from any claims that might be asserted by counter-

parties to contracts or agreements providing the indemnification by and of the Debtor, to the extent of available coverage.

**C. Entry of a Final Decree**

Promptly following (i) occurrence of the Effective Date; (ii) the initial Distributions of the Sale Proceeds to Holders of Allowed Claims contemplated by the Plan, and (iii) the passage of the applicable Claims Bar Dates in the case, the Debtor, or Liquidating Trustee as appropriate, may file a motion with the Bankruptcy Court to obtain the entry of a final decree.

**D. United States Trustee Fees and Reports**

Pursuant to § 1129(a)(12) of the Bankruptcy Code, any outstanding quarterly fees due and owing to the Office of the United States Trustee under 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date. After the Confirmation Date, the Debtor and/or the Liquidating Trustee shall file post-confirmation quarterly disbursement reports and pay all quarterly fees to the Office of the United States Trustee which are required by applicable law until the Case Closing Date.

**E. Post-Effective Date Effect of Evidences of Claims**

Commencing on the Effective Date, notes and other evidences of Claims will represent only the right to receive the Distributions contemplated under the Plan.

**F. No Recourse**

No Person entitled to receive a payment or Distribution under the Plan will have any recourse under this Plan against the Estate, the Debtor, any Affiliate or Inside of the Debtor, the Professionals, the Liquidating Trust or Liquidating Trustee, or those parties' representatives, successors, and assigns, or their respective property and assets, other than the right to receive Distributions in accordance with the terms of the Plan.

**G. No Admissions**

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed, is revoked, or otherwise the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will: (a) be deemed to be an admission by the Debtor with respect to any matter discussed in the Plan or the Disclosure Statement, including liability on any Claim or the propriety of any Claim’s classification; (b) constitute a waiver, acknowledgement, or release of any Claims, Interests, or any Causes of Action held by the Debtor or the Estate; or (c) prejudice in any manner the rights of the Debtor, the Estate, or any Creditors or equity security holders in any further proceedings.

**H. Severability of Plan Provisions**

If, before confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or

interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Article, is valid and enforceable under its terms.

**I. Transfer Tax Exemption**

Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, mortgages, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, including the sale of Property, and any deed of trust evidencing any loan obtained to purchase the Property, shall not be subject to any stamp tax or other similar tax, including, but not limited to, transfer and recordation tax on the sale of the Property.

**J. Governing Law**

The rights and obligations arising under the Plan and any agreements, contracts, documents, or instruments executed in connection with the Plan will be governed by, and construed and enforced in accordance with, District of Columbia law without giving effect to District of Columbia law's conflict of law principles, unless a rule of law or procedure is supplied by: (a) federal law (including the Bankruptcy Code and the Bankruptcy Rules); or (b) an express choice-of-law provision in any document provided for, or executed under or in connection with, the Plan terms.

**K. Retention of Jurisdiction**

Under Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of this Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Case, this Plan and the Plan Documents to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a) Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code § 507(a)(2), including compensation of any reimbursement of expenses of parties entitled thereto;

(b) Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Bankruptcy Code §§ 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the retention and payment of the fees and expenses of the Professionals of the Debtor and/or the Liquidating Trustee as may be

made in the ordinary course of business without the approval of the Bankruptcy Court;

(c) Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(d) Effectuate performance of and payments under the provisions of this Plan;

(e) Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Case, this Plan, or any Plan Document;

(f) Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(g) Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

(h) Consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i) Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

(j) Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

(k) Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, the Confirmation Order, or any Plan Document;

(l) Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Case;

(m) Except as otherwise limited herein, recover all Assets of the Debtor and property of the Estate, wherever located;

(n) Hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code §§ 346, 505 and 1146;

(o) Hear and determine motions for Bankruptcy Rule 2004 examinations;

(p) Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

(q) Hear and determine any Causes of Action;

(r) Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to this Plan;

(s) Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

(t) Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(u) Enforce all orders previously entered by the Bankruptcy Court;

(v) Dismiss the Case; and

(w) Enter a final decree closing the Case and reopening the Case thereafter.

If the Bankruptcy Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Article will not affect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

**L. Successors and Assigns**

The rights, benefits, and obligations of any Person referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of that Person.

**M. Saturday, Sunday, or Legal Holiday**

If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**N. Plan Modification**

Subject to the restrictions set forth in Bankruptcy Code § 1127, the Debtor reserves the right to alter, amend, or modify the Plan before it is substantially consummated.

### O. Withdrawal of the Plan

The Debtor reserves the right to withdraw the Plan before the Confirmation Date.

## XII. LIQUIDATION ANALYSIS

To demonstrate that the Plan satisfies the "best interests" of creditors test, the Debtor considered the potential value that could be recovered for the Estate as a result of the pending Sale Agreement as well as the factors likely affecting administrative costs and the effects on third parties.

The Sale Agreement the Debtor obtained following the marketing of its Property requires a Sale through a chapter 11 Plan and the assumption and assignment of contracts to preserve the Property as a going concern. A conversion to chapter 7 would terminate the ability of the Debtor's existing management company to provide services to the Property and result in the rejection of contracts for parties providing services to the Property as well as the Tenant Leases. Any contract that could be obtained for the Sale of the Property in chapter 7 would be at a fraction of the Property's current value. As a result, essentially all of the proceeds that could be recovered in a liquidation would be paid to the Secured Creditor in Class 2, which would not be paid in full. All other Classes of Creditors would receive no recovery. Additionally, liquidation in Chapter 7 would result in additional administrative claims of the Chapter 7 case including Trustee's commission under 11 U.S.C. § 326, Chapter 7 trustee legal expenses, and transfer and recordation taxes that would be due upon sale of the Property in Chapter 7. A Chapter 7 Liquidation Analysis detailing projected claim amounts and fees under a Chapter 7 liquidation has been included as **Exhibit B** to the Disclosure Statement. As indicated in that analysis, in order for Unsecured Creditors to receive an equivalent distribution in Chapter 7, the estimated sales price for the Property would need to be $80,874,921.11. This represents a 37.5% increase over the best offer for the Property received to date and is likely unobtainable.

As a result, if this Plan is confirmed all Holders of Claims will receive at least as much under this Plan than they would have received in a chapter 7 liquidation.

## XIII. RECOMMENDATIONS AND CONCLUSION

The Debtor, as the proponent of the Plan, believes that the Plan maximizes recoveries to all Creditors entitled to receive distributions on their Allowed Claims and, thus, is in its best interests. The Plan as structured, among other things, allows creditors to maximize their recoveries, and minimizes delays the receipt of funds to all Creditors entitled to receive Distributions on their Allowed Claims.

Dated: August 13, 2024

Respectfully submitted,

*/s/ Bradley D. Jones*

Marc E. Albert, No. 345181
Bradley D. Jones, No. VA 68
Tracey M. Ohm, No. 982727
Joshua W. Cox, No. 1033283
Ruiqiao Wen, No. 1743500
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Tel. (202) 785-9100
Fax (202) 572-9943
marc.albert@stinson.com
brad.jones@stinson.com
tracey.ohm@stinson.com
joshua.cox@stinson.com
ruiqiao.wen@stinson.com
*Attorneys for MP PPH LLC*