# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is between Clear Investment Group, LLC and any assignees, including Langston View, II, LLC (collectively, the "Buyer"), the successful bidder at an auction in the bankruptcy proceeding pending under Case No. 23-246 (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court"), and the Ad Hoc Committee of Tenant-Creditors of MP PPH, LLC (the "Ad Hoc Committee") (collectively, the "Parties"). The Ad Hoc Committee consists of tenants and former tenants of the rental housing complex commonly known as Marbury Plaza (the "Property").

This Agreement resolves the Ad Hoc Committee's pending objections to confirmation of the Debtor's *[Fourth] Amended Plan of Reorganization with Modifications* [Docket No. 667] (the "Plan") solely as it relates to the sale of the Property to Buyer.[1]

This Agreement remains conditioned upon (i) resolution of the Ad Hoc Committee's objection to Debtor's motions to assume and assign leases; (ii) an AVC (defined below) being entered into by the Buyer and the District; and (iii) the sale of the Property to Buyer closing.

## TERMS

| | |
|---|---|
| **Assumption and Assignment of Leases; Rent Credits and Security Deposits** | Subject to the sale closing and as set forth below, Buyer agrees that all tenant leases that are in effect with Debtor, as landlord, at the time of closing, shall be assumed by Debtor and assigned to Buyer effective as of the closing, and that Buyer shall assume all obligations under said leases. For the avoidance of doubt, leases where the initial term has lapsed and are month-to-month under DC law are also leases that shall be assumed by the Debtor and assigned to Buyer effective as of closing date and shall be deemed "in effect with Debtor." |
| | As part of the assumption and assignment of the leases, Debtor shall transfer any existing negative balances and security deposits for each tenant to Buyer, such that the existing negative balances and security deposits are reflected on each tenant's new ledger with Buyer. Buyer shall honor the negative balances and hold the security deposits for the tenants in the ordinary course. In the case of tenants with a negative balance and/or security deposit, the amount of the negative balance at the time of closing shall be reflected as a credit (i.e., negative balance) on the tenant's new ledger with Buyer, and the value of any security deposit shall also be reflected on the tenant's ledger with Buyer. The transfer of any existing negative balances and security deposits for each tenant is conditioned on the Debtor providing a credit at closing |

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

1

| | |
|---|---|
| | to Buyer for all negative balances and security deposits, which the parties acknowledge that the Debtor has confirmed and represented that it is providing such credit. |
| **Timeline for Repairs** | Buyer represents that it has or shall enter into an Assurance of Voluntary Compliance Agreement ("AVC") and that the AVC shall be incorporated into and attached as an exhibit to the Confirmation Order in the Bankruptcy Case. |
| **Assumption of Tenants with Vouchers and Compliance with Subsidy Program Rules** | Buyer shall assume all leases with current tenants at the Property who are participants in the Housing Choice Voucher Program administered by the D.C. Housing Authority ("DCHA") and comply with all obligations under such leases and all DCHA program rules governing the voucher. This includes, but is not limited to, compliance with all DCHA housing quality standards or similar criteria governing the physical condition and habitability of rental units subsidized by the voucher.

Consistent with applicable D.C. law, Buyer shall also freely accept rental applications from prospective tenants who are participating in any voucher or subsidized housing program and shall not discriminate against any current or prospective tenant on the basis of the person's source of income or other protected characteristic under D.C. Code § 2–1401.01. et seq. |
| **Tenant Relocation Pending Rehabilitation and Right to Return** | In general, Buyer shall not seek to relocate current tenants to a different unit at the Property or to another unit at a different property, unless the contracted mold remediator concludes that temporary relocation is necessary for completion of necessary mold and/or asbestos remediation in a tenant's rental unit.

Buyer may offer to temporarily relocate the requesting tenant to an available unit for the duration of repairs and rehabilitation work necessary to bring the requesting tenant's original rental unit into full compliance with applicable D.C. housing codes and related regulations. Buyer shall only offer, and shall only temporarily relocate a tenant to, a temporary relocation unit that is in habitable condition and fully compliant with the D.C. housing code and related regulations.

While residing at the temporary relocation unit, any temporarily relocated tenant shall be charged the same amount of rent that the tenant was charged for the tenant's original unit.

Any temporarily relocated tenant shall have the option to sign a new lease for the unit offered to the tenant as a temporary |

relocation unit, if the tenant prefers to lease the new unit instead of returning to their original unit. The new lease shall be for the same term as tenant's existing lease (or shall continue on a month-to-month basis, as the case may be).

| | |
|---|---|
| **Resolution of Pending Eviction Cases** | For any tenant who does not have a pending eviction case for nonpayment of rent, the Debtor shall waive and release any and all claims for Delinquent Rentals, and no such Delinquent Rentals claims or rights shall be transferred to the Buyer, such that tenant's new ledger with Buyer shall reflect a zero balance (or in the case of tenants with negative balances and/or security deposits, as addressed above, the negative balance and security deposit shall also be reflected on the ledger with Buyer). |

For any tenant with a pending eviction case, upon taking ownership, Buyer shall (i) immediately move to stay all pending eviction cases in the Landlord and Tenant Branch of the D.C. Superior Court (individually, an "eviction case," and collectively, the "eviction cases"), other than an eviction case for criminal activity, and (ii) move to vacate any obligation by a tenant to pay rent to the court registry of the D.C. Superior Court. After any tenant/defendant with an eviction case for nonpayment of rent has timely paid ("timely paid" shall be inclusive of any grace period allowed by the tenant's lease), in full, the first two months' rent after the closing date due to Buyer when due each month, Buyer shall immediately (i) move to vacate any judgment (in any case where judgment has been entered), (ii) immediately move to dismiss the eviction case, and (iii) waive and release any and all claims for past due rent due by the tenant, inclusive of any Delinquent Rentals claims.

Within five (5) business days of the Effective Date of the Confirmation Order, Buyer shall notify all tenants at the property of the above terms. Upon taking ownership, Buyer shall, within one (1) business day, notify all tenants that Buyer has taken ownership of the Property, notify all tenants of how to make rent payments to Buyer, and notify tenants again of the above terms regarding the dismissal of eviction cases.

For any eviction case for nonpayment of rent that is pending as of the closing date (inclusive of cases where judgment has been entered), after the two month period, Buyer shall provide the Ad Hoc Committee, through its counsel Legal Aid DC, a list (i) of all cases that Buyer shall dismiss based on the tenant's timely

|  |  |
|---|---|
|  | payment of two months' rent, and (ii) a list of all cases where the Buyer alleges the tenant has not timely paid two months' rent. |
| **Right of Tenants to Rely on Representations Made Herein** | The terms of this Agreement are incorporated into, and shall be attached as an exhibit to, the Confirmation Order in the Bankruptcy Case. |
|  | This Agreement is binding upon the Parties hereto.  For the avoidance of doubt, this Agreement is not binding on any third-party purchaser, assignee, or transferee of the Property unrelated to the Debtor, Buyer, or their members, owners, officers, directors, or affiliates. |

**[SIGNATURE PAGE FOLLOWS]**

Dated: September 12, 2024

*/s/*  Kevin Morse
Kevin Morse (ARDC #6297244)
Clark Hill
130 East Randolph Street, Suite 3900
Chicago, Illinois 60601-6317
(312) 985-5556
kmorse@clarkhill.com

*Counsel for Buyer*


*/s/*  Rosa Evergreen
Rosa Evergreen (D.C. Bar #500227)
Arnold & Porter Kay Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-5000
rosa.evergreen@arnoldporter.com

*/s/*  Mel Zahnd
Mel Zahnd (D.C. Bar #51531262)
Eleni P. Christidis (D.C. Bar #1552527)
Sarah Reichenbach (D.C. Bar #90013184)
Legal Aid Society of the District of Columbia
1331 H Street NW, Suite 350
Washington, DC 20005
(202) 628-1161

*Counsel for the Ad Hoc Committee of Tenant-Creditors of MP PPH, LLC*